**CROSNER LEGAL, P.C.**
Brandon Brouillette, Esq (SBN 273156)
Craig W. Straub (SBN 249032)
Zachary M. Crosner (SBN 272295)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-763
Fax: (310) 510-6429
bbrouillette@crosnerlegal.com
craig@crosnerlegal.com
zach@crosnerlegal.com

Attorneys for Plaintiffs,
DAVIDA MINOR and ASHA
AYANNA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVIDA MINOR and ASHA AYANNA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>FAVORITE WORLD, LLC,<br><br>    Defendant. | Case No.:  2:24-cv-04425-JFW-MRW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**1. VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMIES ACT;**<br>**2. VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW [Cal. Bus. § 17200, et. Seq.]**<br><br>Complaint Filed: April 19, 2024<br>Removal Date:    M<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DAVIDA MINOR ("Plaintiff Minor") and Plaintiff ASHA AYANNA ("Plaintiff Ayanna") (collectively referred to herein as "Plaintiffs") bring this action against FAVORITE WORLD, LLC (referred to herein as "Defendant" and/or "Shapermint"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to Plaintiffs' acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

## NATURE OF THE ACTION

1.      This is a consumer protection action that seeks to remedy Defendant's unlawful and deceptive business practices with respect to fake and misleading sale promotions advertised on Defendant's website www.shapermint.com.   Defendant offers goods that are presented as being on sale at a highly discounted price for a limited time when in fact the goods were not offered at the stated original price within 90 days, or any other extended time frame, such that the advertised sale price is not a discounted price at all. Rather, the sale price is merely Defendant's actual price and the non-stop promotion of a themed sales event is merely a marketing gimmick designed to lure consumers into believing they purchased a product that maintains higher perceived value than the price they actually paid.

2.      Advertised "sale" prices are important to consumers as they are more likely to purchase an item if they know they are getting a good deal. If consumers think a sale will end soon, they more are likely to buy now, rather than wait, comparison shop, and/or buy a different product.  And while there is nothing wrong with legitimate sales, fake sales that include made-up regular prices, made-up discounts, and made-up expirations—like Defendant's 'sales' on its website—are deceptive and illegal.

FIRST AMENDED CLASS ACTION COMPLAINT

3.     As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing*, it is deceptive to make up an "artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" of that price. 16 C.F.R § 233.1. Additionally, California law provides that "[n]o price shall be advertised as a former price unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. As a result, false sales violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. Prof. Code §§ 17200, *et seq.*

4.     Defendant manufactures, markets, advertises, and/or sells undergarments and shapewear, including bras, underwear, leggings, camis, bodysuits, swim wear, among other related products (the "Products"). The Products are sold online through Defendant's website, www.shapermint.com. There, Defendant prominently advertises sales on its website. Initially, the website's homepage advertises prominent sitewide themed sales (such as a "Spring Sale") offering discounts that are stated to be "up to 70% off" the purported "regular" prices. For example, on March 13, 2024, Defendant's homepage advertised the following limited time "Spring Sale" event:

FIRST AMENDED CLASS ACTION COMPLAINT

5.     In conjunction with the themed sales advertisement, Defendant's website prominently displays a banner with countdown timer indicating that the sales prices offered that day are set to expire within hours.  For example, on March 13, 2024, Defendant's website included the "Spring Sale" banner with the following countdown timer:

**SPRING SALE | Today's Deal ends in 7h 53m 12s**

as    Underwear    Leggings    Camis    Packs & Bundles    Best Sellers    Spring Sale    Com

6.     The product pages listed on its website show the advertised sale prices with an original price, slashed out using a strikethru font and an offered sale price. Next to the sale price, is a red badge highlighting the discount that is presumably being offered.  For example, on May 13, 2024, Defendant advertised "Shapermint Essential Seamless Comfort Mid-Waist Shaping Leggings" in the color olive as being "60% OFF" based on a $19.99 sale price marked down from a $50.00 original price. Below the sale price, a countdown timer with a clock says "Hurry! This special sale event ends in… [the countdown time listed.]"



FIRST AMENDED CLASS ACTION COMPLAINT

7.   In reality, Defendant's advertised "regular" prices are not the prevailing regular prices, and the sales Defendant advertise are not really limited time sales.

8.   Indeed, Defendant runs the same sale for over ninety days, simply retitling the sale with a different name in accordance with a different theme, holiday or season (e.g., Holiday Sale, Semi-Annual Sale, Valentine's Day Sale, End of Season Sale, Presidents' Day Sale, Spring Sale, etc.) with one purportedly separate sale running immediately into the next such that the Products are never sold at their "regular prices."

9.   For example, on December 12, 2023, Defendant advertised a "Holiday Sale" with sales "up to 70 percent off" with a limited time "Today's Deal" with a countdown timer.



10.   On January 2, 2024, Defendant advertised a "Semi-Annual Sale" with sales "up to 70% off" with a limited time "Today's Deal" countdown timer.



11.   On February 11, 2024, Defendant advertised a "Valentine's Day Sale" with sales "up to 70% off" with a limited time "Today's Deal" countdown timer.



12.   On March, 13, 2024, Defendant advertised the "Spring Sale" with sales "up to 70% off with a limited time "Today's Deal" countdown timer, as shown in paragraphs 4 and 5 above.

13.   In addition to using fake timers that countdown fake limited time sales, Defendant use a prominently displayed fake timer at checkout that reads "Your order is reserved for 59:00 minutes."



Captured 3.13.24.

FIRST AMENDED CLASS ACTION COMPLAINT

14.   Had Defendant been truthful, Plaintiffs and other consumers would not have been enticed to purchase the products for the purported sale price listed.

15.   This fifty-nine-minute countdown timer effectively rushes unwitting consumers, like Plaintiffs, to usher through the check-out process as fast as possible, requiring that contact information, shipping address information, and payment information, and a final consent to the order being processed all be completed within a fifty-nine minute time frame.  On information and belief, this timer is just another ruse, like the fake limited sales it advertises, which seeks to manipulate consumers into finalizing a purchase without second guessing, comparison shopping, or considering any of Defendant's hidden terms and conditions any of which might otherwise dissuade consumers from completing the purchase.  Indeed, believing that the sale was limited, and that the countdown timers were genuine, Plaintiffs rushed through the checkout process as fast as possible, inputting all the necessary information required in order to complete the transaction within the limited time that was only supposedly provided.

16.   In completing their purchases, Plaintiffs were not made aware of any additional terms and conditions that they would allegedly be assenting to in completing their purchases, including any purported agreements to arbitrate her claims and/or waive their right to a jury trial and/or waive their right to proceed on a class or representative action basis, nor did they have time to consider such additional terms and conditions had she been made aware of them in the first place due to Defendant's countdown timers, as described above.

## **JURISDICTION AND VENUE**

17.   Defendant removed this action to this Court form the Superior Court of California, County of Los Angeles, on May 28, 2024 alleging that this Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"),

codified in relevant part at 28 U.S.C. §§ 1332(d), 1441 (a) and 1453.  *See* ECF No. 1.

**PARTIES**

18.   Plaintiff DAVIDA MINOR is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California.

19.   Plaintiff Minor resides in the county of Los Angeles and purchased leggings from Defendant's website while residing in Los Angeles, County on or around February 5, 2023.

20.   Plaintiff Minor bought the following products online on Defendant's website on or about February 5, 2023, during which time a "Valentine's Day Sale" was advertised with prices discounted "up to 70% off": Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings Olive; Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings Black; Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings Burgundy; and Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings Blue.  Defendant assigned her Order No. #SM11503167.

21.   Like other customers, when Plaintiff Minor bought the leggings, Defendant advertised that a purported sale was going on and that the products were heavily discounted. When Plaintiff Minor purchased the leggings from Defendant's website, the countdown timer indicated that the purported Valentine's Day Sale would end within hours. Plaintiff Minor believed that the leggings she purchased usually retailed for the displayed regular price of $50. She further believed that she was getting a substantial discount from the regular price as the advertised sale purportedly discounted the price(s) down to $19.99 and/or $17.99 and/or $21.99. Plaintiff Minor also believed that the sale would end soon as a result of Defendant's prominent countdown timer.  Plaintiff Minor would not have purchased all the items she purchased and paid the amount she did for each item had she known that the items

were not actually discounted and that the prices she paid for each item were not for a limited time.

22.   Plaintiff ASHA AYANNA is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California.

23.   Plaintiff Ayanna resides in Fresno, California and made her purchase from Defendant's website on or around June 11, 2021.

24.   Plaintiff Ayanna bought two products online on Defendant's website on or around June 11, 2021, during which time a "Summer Ready Sale" was advertised, including the "Empetua Everyday Smoothing Short" in black for $19.99 and "The Classic Empetua Fresh Control Mid-Waist Shaper Bike Shorts" in black for $22.99. Defendant assigned her Order No. #SM7408779. Both items were significantly marked down from their displayed regular prices. Like Plaintiff Minor, Plaintiff Ayanna believed that the items she purchased usually retailed for the displayed regular prices that were listed. She also believed she was getting a substantial discount from the regular price as the advertised sale purportedly discounted the prices by a substantial margin and that the advertised sale price was for a limited time only. Plaintiff Ayanna would not have purchased all the items she purchased and paid the amount she did for each item had she known that the items were not actually discounted and that the prices she paid for each item were not for a limited time.

25.   Defendant FAVORITE WORLD, LLC is a Nevada Limited Liability Company that at all relevant times, was authorized to do business in the State of California and is doing business in California through its website and through other various retailers.  Defendant is a subsidiary of Traifailea Holding Company Ltd. Defendant FAVORITE WORLD, LLC does business as Shapermint.

///

///

# **FACTUAL ALLEGATIONS**

26. Defendant manufactures, advertises, markets, and/or sells shapewear, including but not limited to, bras, underwear, leggings, camis, bodysuits, swim wear, among other related products directly to consumers through the website, shapermint.com.

27. Defendant's website creates an illusion that consumers are receiving a limited-time discount. Defendant does this by advertising misleading limited-time sales, false "regular" prices, and fake discounts based on the purported regular price.

<u>False limited-time sales:</u>

28. Defendant's purported sales frequently advertise up to 70% discounts off purported regular prices.

29. For example, on December 12, 2023, Defendants advertised a limited time 70 percent off "Holiday Sale":



Captured on 12.12.23

30. On January 2, 2024, Defendants again advertised a limited time 70 percent off sale, this time retitled as a "Semi-Annual Sale":

///

///



Captured on 1.2.24

31.   On February 11, 2024, Defendants advertised the same 70 percent off limited time sale as a "Valentine's Day Sale":

Captured on 2.11.24

32.   On March 13, 2024, Defendant advertised a limited time Spring Sale offering up to 70% Off on their home page, which included a prominent banner displayed at the top indicating the sale will end by the end of the day.

1
2
3
4
5
6
7
8
9
10



11    33.   On March 13, 2024, upon clicking on the particular leggings products

12 Plaintiff purchased on or around February 5, 2023, as described *supra*, Defendant

13 advertised the same limited time sale:

14
15
16
17
18
19
20
21
22
23

24 Captured 3.13.24

25 ///

26 ///

27
28

1
2
3
4
5
6
7
8
9



10  Captured 3.13.24

11
12
13
14
15
16
17
18
19






20  Captured 3.13.24

21
22  ///
23  ///
24  ///
25  ///
26  ///
27
28

FIRST AMENDED CLASS ACTION COMPLAINT



Captured 3.13.24

34.   The next day, on March 14, 2024, Defendant advertised the same limited time Spring Sale offering 70% off, with the same prominently displayed timer/countdown banner again indicating the sale will end by end of the day.



Captured on 3.14.24

35.   On March 14, 2024, again upon clicking on the particular leggings products Plaintiff Minor purchased on or around February 5, 2023 as described *supra*, Defendants advertised the same limited time sale:

1
2
3
4
5
6
7
8
9
10
11


Captured 3.14.24

12
13
14
15
16
17
18
19
20
21
22
23
24

Captured 3.14.24

25   ///
26   ///
27
28

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12    Captured on 3.14.24
13
14
15
16
17
18
19
20
21
22
23



24    Captured on 3.14.24
25
26
27
28

36. The following day, On March 15, 2024, Defendant advertised the same limited time Spring Sale offering 70% Off with a new countdown timer that restarted that day.



Captured on 3.15.24

37. On March 15, 2024, again upon clicking on the particular leggings products Plaintiff Minor purchased on or around February 5, 2023, as described *supra*, Defendant advertised the same limited time sale:



17

FIRST AMENDED CLASS ACTION COMPLAINT

1   Captured on 3.15.24



Captured on 3.15.24



Captured on 3.15.24

///

///

///

///

1
2
3
4
5
6
7
8
9
10



11  Captured on 3.15.24

12      38. On July 3, 2024, again upon clicking on the particular leggings products

13  Plaintiff Minor purchased on or around February 5, 2023, as described *supra*,

14  Defendant advertised the same limited time sale:

15
16
17
18
19
20
21
22
23

 

Captured on 7.3.24

24
25
26
27
28

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9



**Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings**

★★★★½ 800 reviews

~~$50.00~~ **$25**⁹⁹  **50% OFF - Save $24.00**

CLEARANCE
Final Sale Item ⓘ

Color: **Black**

⚫ 🔵 ⚫ 🟢 🔴

Size and Fit Guide
Size: **S**

Captured on 7.03.24.

10
11
12
13
14
15
16
17



**Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings**

★★★★½ 800 reviews



~~$50.00~~ **$25**⁹⁹  **50% OFF - Save $24.00**

CLEARANCE
Final Sale Item ⓘ

Color: **Burgundy**

⚫ 🔵 ⚫ 🟢 🔴

Captured on 7.03.24.

18
19
20
21
22
23
24
25
26
27
28



**Shapermint Essentials Seamless Comfort Mid-Waist Shaping Leggings**

★★★★½ 800 reviews

~~$50.00~~ **$25**⁹⁹  **50% OFF - Save $24.00**

CLEARANCE
Final Sale Item ⓘ



Color: **Gray**

⚫ 🔵 ⚪ 🟢 🔴

Captured on 7.03.24.

39.   The timers prominently displayed on Defendant's home page and when clicking on the products countdown to midnight, at which point the sale would purportedly end.

40.   However, at midnight, the sale did not end. Instead, the same sale was advertised the next day with a new timer that again states the sale will expire at midnight. Thus, the very next day, on March 14, 2024 (and again on March 15, 2024, and each day thereafter), Defendant restarted the timer. The timer again, indicated that the sale would end at midnight.

SPRING SALE | Today's Deal ends in 7h 53m 12s

as   Underwear   Leggings   Camis   Packs & Bundles   Best Sellers   Spring Sale   Com

Captured on 3.14.24.

41.   On information and belief, Defendant continues this practice on a daily basis. Rather than having a sale expire at midnight, as the website represents, Defendant instead changes the timer the next day to indicate that the sale will end at midnight the same day. Each day, a new timer is set up to countdown to midnight, at which point the purported sale will end. However, the "sale" never ends and each day an updated timer appears on the home page.

42.   Defendant's website persistently misleads consumers into believing that a sale is ending soon, when in fact it does not.

<u>False regular prices and fake discounts:</u>

43.   Defendant's website also lists fake regular prices (that is, prices reflecting the list price or value of an item) and purported discounts.

1

2

44.    For example, Defendant frequently advertises Products with significant discounts.



Captured March13, 2024

45.    When Plaintiffs made their purchase, the Products were purportedly on sale for a limited amount of time. Plaintiffs relied on these representations at the time of purchase.

46.    In reality, these sales were not for a limited time, and on information and belief, the products offered for sale on Defendant's website, including the Products Plaintiffs purchased, were never actually sold within the relevant statutory period at the listed retail price on which the purported discounted price is based. Moreover, Defendant runs the same and/or similar sale(s) for more than three months such that the Products are never offered at the advertised "original" price in violation of California law. Plaintiffs relied on the represented list prices falsely believing they were in fact the prices that the Products were normally offered for sale outside the limited timeframe when a discounted sale price was offered.

47.    By listing fake regular prices and fake discounts, Defendant misleads consumers into believing that they are getting a good deal, and that they need to act fast in order to get the deal.

## A. Defendant's advertisements violate California Law

48.    As the Federal Trade Commission states in its' *Guides Against Deceptive pricing,* "where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the 'bargain' being advertised is a false one." 16 C.F.R. § 233.1. Advertising such false "bargains" is false, misleading, and unfair. Accordingly, it violates California's Unfair Competition law, which bans unlawful, unfair, or fraudulent" business acts and practices. *See* Cal. Bus. & Prof. Code § 17200.

### California's Consumers Legal Remedies Act

49.    In addition, California's Consumers Legal Remedies Act, specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(13). Defendant's advertisements make false statements regarding the time limits of the sale, when in fact the sale continues on a daily basis. Defendant's advertisements also make false statements about the existence of the sale, and the amounts of price reductions, when in fact, the Products are never sold at the advertised "regular" price.

### California's Unfair Competition Law

50.    Further, under California law, "No price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding"). Cal. Bus. & Prof. Code § 17501. As described in further detail above, Defendant advertises their Products using alleged former prices that were not the prevailing market prices within the preceding three months.

51.    Moreover, the UCL defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

52.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

53.   In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

54.   Defendant's conduct violated California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(1)(13), and California's unfair competition laws by advertising fake sales – that is, sales with made up regular prices, made up discounts, and made up expirations that misled consumers.

**Defendant's advertisements harm consumers.**

55.   Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are prices at which Defendant sells its Products. Reasonable consumers would also expect that, if they purchase during the sale, they will receive a discount from the regular purchase price.

56.   Defendant's conduct artificially increases demand for its deceptively priced Products and induces consumes to pay more than the prevailing market price based on a false impression of the Products' falsely inflated value.

57.   In addition, consumers are more likely to buy the Products if they believe that the Product is on sale and that they are getting a substantial discount.

58.   Consumers that are presented with discounts are substantially more likely to make the purchase. For example, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[1]

---

[1] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com). https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=SocialBoost-

59. As such, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.

**Plaintiffs were misled by Defendant's Misrepresentations.**

60. As set forth above, Plaintiffs purchased products (described *supra*) from Defendant's website, shapermint.com. The products Plaintiffs purchased were advertised as being on sale for a limited time at the time of purchase.

61. Defendant represented that the "regular" prices of the items were much higher than the discounted sale prices that were listed. When Plaintiffs made their purchases, they believed the products were on sale for a limited time and falsely believed that they were receiving a substantial discount. Thus, Plaintiffs read and relied on the representations on Shapermint's website indicating that the products had the advertised "regular" price, and that they were receiving a substantial discount as compared to the regular price.

62. Plaintiffs would not have purchased the products, or paid the same amount for the products, if they knew that Defendant's products were not actually on sale, and that they were not in fact receiving a discount.

## CLASS ALLEGATIONS

63. Plaintiffs bring this class action pursuant Cal. Code. Civ. Proc. § 382 on behalf of the following class ("Class" or "Class Members"):

> All persons in California who purchased one or more of Defendant's Products advertised at a discount on Defendant's website at any time from four years preceding the filing of this Complaint through certification.

64. Excluded from the from the Class are: (i) Defendant's and their officers, directors, and employees; (ii) any person who files a valid and timely request for

---

,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount. Last visited on April 16, 2024.

exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

65. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

66. The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

67. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are hundreds of consumers who are Class Members described above who have been damaged by Defendant's practices.

68. <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendant made false or misleading statements of fact in their advertisements;

    b. Whether Defendant violated state consumer protection statutes;

    c. Whether Defendant's practices violate California's Consumers Legal Remedies Act;

    d. Whether Defendant's practices violate California's Unfair Competition law, California Business and Professions Code sections 17200, *et. seq.*,

    e. Damages needed to reasonably compensate Plaintiffs and Class Members; and

f. Whether Plaintiffs and the proposed Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this suit.

69. <u>Typicality</u>: Plaintiffs are members of the Class they seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same unlawful conduct and purchased the Products advertised at a discount on Defendant's website. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

70. <u>Adequacy</u>: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seek to represent; the alleged claims are common to all other members of the Class, and Plaintiffs have a strong interest in vindicating Plaintiffs' rights; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

71. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

72.   In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

73.   Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and

prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiffs and Class members.

74. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION
### Violation of California's Consumers Legal Remedies Act
### (On behalf of Plaintiffs and Class Members Against Defendant)

75. Plaintiffs re-allege and incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

76. Plaintiffs bring this cause of action on behalf of Plaintiffs and Class Members.

77. Plaintiffs and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

78. Plaintiffs and Class Members have engaged in "transactions" with Defendant as that term is defined by California Code Civil Procedure § 1761(e).

79. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in the sale of goods to consumers.

80. As alleged fully above, Defendant made and disseminated untrue and misleading statements of facts in their advertisements to Class Members. Defendant did this by advertising limited-time offers that were not limited in time, using fake regular prices, and advertising fake discounts.

81. Defendant violated, and contuse to violate, §1770(a)(13) of the California Civil Code by making false or misleading statements of fact concerning reasons for existence of, or amount of, price reductions on its website. Defendant has violated §

1770(a)(13) by (1) misrepresenting the regular price of products on its website, (2) advertising discounts and saving that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings on its website are available only for a limited time, when in fact they are not, and (4) regularly available.

82.    Defendant violated, and continues to violate, § 1770(a)(5) of the California Civil Code by representing that products offered for sale on its website have characteristics or benefits that they do not have. Defendant represents that the value of their Products are greater than it actually is by advertising inflated regular prices and fake discounts for products.

83.    Defendant violated, and continues to violate, § 1770(a)(9) of the California Civil Code. Defendant violated this by advertising its products as being offered at a discount, when in fact Defendant do not intend to see the products at a discount.

84.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and other Class Members. Defendant knew, or should have known through exercise of reasonable care, that these statements were inaccurate and misleading.

85.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read and reasonably relied on them when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

86.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., reasonable consumers would consider them important in deciding whether to buy Defendant's Products.

87.    Defendant's misrepresentations were substantial factor and proximate cause in causing damages and losses to Plaintiffs sand Class Members.

88.   Plaintiffs and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's Products if they had known that the discounts, regular prices, and/or the limited-time offers were not real, and/or (b) they would not have purchased the same quantity of Defendant's Products if they had known that the discounts, regular prices, and/or the limited-time offers were not real, and/or (c) they would have paid less for the Products than they actually paid.

89.   Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other Class Members, seek injunctive relief.

90.   Pursuant to California Civil Code § 1782 of the CLRA, on May 28, 2024, Plaintiffs notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify the problems associated with the acts and practices described above. A copy of the letter is attached as **EXHIBIT 1.** Defendant has failed to rectify the problems associated with the actions detailed above. Accordingly, Plaintiffs seek actual, punitive, and statutory damages. *See* Civil Code § 1782.

## SECOND CAUSE OF ACTION
### Violation of California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (On behalf of Plaintiffs and Class Members Against Defendant)

91.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

92.   Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

93.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, as set forth above, California's False Advertising Law, and the Federal Trade Commission Act ("FTCA"), as alleged herein.

94.    The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

95.    Cal Bus. & Prof. Code § 17501, provides:

For the purpose of this article the worth or value of any thing advertised is the
prevailing market price[2], wholesale if the offer is at wholesale, retail if the offer
is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, [3] unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

---

[2] The term "prevailing market price" refers to the retail [price] if the offer is at retail. Cal. Bus. & Prof. Code § 17501.
[3] The term "advertised thing" refers to the exact same prodct offered and not an equivalent or similar product. *See People v. Superior Ct. (J.C. Penney Corp.),* 34 Cal. App. 5th 376, 412 (2019) ("if the advertisementspecifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of that item only.")

96.   The Federal Trade Commission Act ("FTCA") prohibits the pricing scheme employed by Defendant, stating:   "[i]f the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictious one." 16 C.F.R. § 233.1 (a).

97.   The FTCA also prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1).

98.   Pursuant to 16 C.F.R. § 233.1, entitled "Former Price Comparisons":

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the ***former price*** is the actual, bona fide price at which the article was offered to the public on a ***regular basis*** for a ***reasonably substantial period of time***, it provides a price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price*** was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a ***reasonably substantial period of time***, in the ***recent***, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

99.   The FTCA also prohibits retailers from offering fake limited duration sales, stating: "[Retailers] should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a 'limited' offer which, in fact, is not limited. 16 C.F.R. § 233.5.

100. Through its conduct as alleged herein, Defendant has violated and continues to violate § 1770(a)(5), (9), and (13) of the California Civil Code, §§ 17500 and 17501 of the California Business & Professions Code, and the FTCA.

***The Deceptive Prong***

101. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were all false and misleading.

102. Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

103. Plaintiffs relied on Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

104. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that their Products were on sale, that the sale was limited in time, that the products had a specific regular price, and that the customers were receiving discounts.

105. Defendant violated established public policy by violating the CLRA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA).

106. The harm to Plaintiffs and Class Members greatly outweighs the public utility of Defendant's conducts. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

107. Plaintiffs and the Class Members could not have reasonably avoided this injury.

108. As alleged above, Defendant's representations were deceptive to reasonable consumers, like Plaintiff.

109. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

110. For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Defendant's Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decisions.

111. In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Defendant's Products.

112. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class Members.

113. Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that they were not discounted, and/or (b) they overpaid for Defendant's Products because the Products are sold at the regular price and not at a discount.

## JURY DEMAND

114. Plaintiffs demand a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of the Class, requests for judgment as follows:

(a)    An order declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class, and Plaintiffs' attorneys as Class Counsel to represent the Class and Class Members;

FIRST AMENDED CLASS ACTION COMPLAINT

(b)   An order declaring that Defendant's conduct violates the statutes referenced herein;

(c)   An order entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with California's Consumers Legal Remedies Act;

(d)   An order awarding Plaintiffs and Class Members actual, treble, damages, statutory and punitive damages;

(f)   An order awarding Plaintiffs and Class Members restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and Class Members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

(g)   An order awarding monetary damages, including treble damages as permitted by law;

(h)   An order for both pre- and post-judgment interest on any amounts awarded;

(i)   An order awarding Plaintiffs and the Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses and cost of suits; and

(j)   An order granting such other and further relief as the Court may deem just and proper.

Dated: July 3, 2024                    **CROSNER LEGAL, P.C.**


By: _/s/Brandon Brouillete_
Brandon Brouillete
Craig W. Straub
Zachary M. Crosner
Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT

### Affidavit Pursuant To California Civil Code § 1780(D)

I declare as follows: I am an attorney duly licensed to practice before this Court and all of the courts of the State of California. I am an attorney at the law firm of Crosner Legal, P.C., one of the counsel of record for plaintiff in the above-entitled action. Defendant has done, and is doing, business in California, including the specific County where Plaintiffs first filed this action. Such business includes the marketing, promotion, distribution, and sale of its product at issue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed July 3, 2024, at Los Angeles, California.


**CROSNER LEGAL, P.C.**


By: */s/Brandon Brouillete*
        Brandon Brouillette

FIRST AMENDED CLASS ACTION COMPLAINT