1  Brandon Brouillette (SBN 273156)
   bbrouillette@crosnerlegal.com
2  Craig W. Straub (SBN 249032)
   craig@crosnerlegal.com
3  Zachary M. Crosner (SBN 272295)
   zach@crosnerlegal.com
4
5  **CROSNER LEGAL, P.C.**
   9440 Santa Monica Blvd. Suite 301
6  Beverly Hills, CA 90210
   Tel: (866) 276-763
7  Fax: (310) 510-6429
8
9  Attorneys for Plaintiffs Davida Minor
   and Asha Ayanna
10
11
12            **UNITED STATES DISTRICT COURT**
13        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| DAVIDA MINOR and ASHA AYANNA, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-4425-JFW-AJR |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| FAVORITE WORLD, LLC, | Judge: Hon. John F. Walter |
| Defendant. | Date: August 11, 2025 |
| | Time: 1:30 PM |
| | Courtroom: 7A |
| | *Complaint. Filed: April 19, 2024* |
| | *Notice of Removal: May 28, 2024* |
| | *FAC Filed: July 3, 2024* |
| | *Trial Date: August 26, 2025* |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that as soon as the matter may be heard by the Honorable John F. Walter at Courtroom 7A of the United States District Court for the Central District of California, Southern Division, 411 West Fourth Street, Santa Ana, California, 92701, Plaintiffs individually and on behalf of the proposed Settlement Class hereby move for preliminary approval of the class action Settlement Agreement, conditional certification of Settlement Class, and approval of Class Notice.

Plaintiffs respectfully move the Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Settlement Class for Settlement purposes; (3) approving the form and content of the forms of Class Notice attached as Exhibits A-B to the Settlement Agreement; (4) appointing Plaintiffs Davida Minor and Asha Ayanna as Class Representatives; (5) appointing Brandon Brouillette, Craig W. Straub, and Zachary M. Crosner of Crosner Legal, P.C. as Class Counsel; (6) ordering Defendant to provide notice to the Settlement Class; (7) appointing Phoenix Settlement Administrators as the Settlement Administrator; and (8) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

Plaintiffs base this motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Settlement Agreement, the Declaration of Brandon Brouillette ("Brou. Decl.") and the exhibits appended thereto, any of the evidence on file with the Court in support of this motion during the hearing, and on such other written and oral argument presented to the Court.

Dated:  July 14, 2025

CROSNER LEGAL, P.C.

By:    */s/ Brandon Brouillette*
        Brandon Brouillette
        Craig W. Straub
        Zachary M. Crosner

        Attorneys for Plaintiffs
        DAVIDA MINOR and ASHA
        AYANNA

# **TABLE OF CONTENTS**

NOTICE OF MOTION ....................................................................................... 1

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES ................. 3

I.    INTRODUCTION ....................................................................................... 3

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ........................ 4

    A.   The Alleged Pricing Scheme ............................................................ 4

    B.   Procedural History of the Litigation ................................................. 5

    C.   Settlement Negotiations .................................................................... 7

    D. The Settlement.................................................................................... 8

III.  ARGUMENT ............................................................................................... 9

    A.   The Proposed Settlement Warrants Preliminary Approval ................ 9

        1.   The Strength of Plaintiff's Case ............................................ 11

        2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation and Maintaining Class Action Status Through Trial .................................................................... 13

        3.   The Amount Offered in Settlement ........................................ 14

        4.   The Extent of Discovery Completed and Settlement Negotiations ................................................................... 16

    B.   The Court Should Certify the Settlement Class................................ 18

        1.   The Settlement Class Satisfies All Rule 23(a) Requirements .................................................................. 18

        2.   The Proposed Settlement Class Satisfies Rule 23(b) ............. 21

    C.   Proposed Class Counsel and Class Representatives Should Be Appointed for the Settlement Class .................................................. 23

    D.   The Proposed Class Notice Distribution Plan and Content Satisfies Due Process and Rule 23 .................................................. 23

IV.   CONCLUSION ......................................................................................... 27

L.R. 11-6.2 Certificate of Compliance ................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aberl, et al. v. Ashley Global Retail, LLC*,
   No. 37-2023-00011536 (San Diego Sup. Ct. 2023)...........................................16

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................18

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................22

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .......................................................................13

*Barr v. SelectBlinds LLC*,
   2024 WL 5162609 (C.D. Cal. Mar. 4, 2024) .....................................................14

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................18

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ...........................................................................18

*Browning v. Yahoo! Inc.*,
   2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ...................................................25

*Carter v. Anderson Merchandisers*,
   LP, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010)..................................................13

*Chowning v. Kohl's Dep't Stores, Inc.*,
   735 F. App'x 924 (9th Cir.) ...............................................................................12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)..............................................................................11

*Cranney v. Carriage Servs., Inc.*,
   2008 WL 608639 (D. Nev. Feb. 29, 2008) ........................................................25

*Edwards v. Ford Motor Co.*,
   603 F. App'x 538 (9th Cir. 2015).......................................................................19

*Evans v. Linden Rsch., Inc.*,
   2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) .................................................... 25

*In re: Fight Pass Auto-Renewal Litigation*,
   No. 2:23-cv-00802-CDS-EJY (D. Nev. Jan. 1, 2025) ...................................... 16

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ................................................................................ 4

*Habberfield v. Boohoo.com USA, Inc.*,
   No. 2:22-cv-03899-GW-JEM (C.D. Cal. 2023) ................................................ 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................... *passim*

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................................. 20

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F. 3d 539 (9th. Cir 2019) ............................................................................. 23

*Inga v. Bellacor.com, Inc.*,
   2020 WL 5769080 (C.D. Cal. July 17, 2020) .................................................... 19

*Kelly v. Phiten USA, Inc.*,
   277 F.R.D. 564 (S.D. Iowa 2011) ...................................................................... 25

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ............................................................................... 18

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .............................................................................. 26

*Lane v. Facebook, Inc.*,
   No. C 08-3845 RS, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ................... 25

*Lilly v. Jamba Juice Co.*,
   2015 WL 2062858 (N.D. Cal. May 4, 2015) ..................................................... 13

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................................ 14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................... 15, 16

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 11

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................................... 13

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ................... 10

*People v. Macy's Inc.*,
   No. BC643040 (Los Angeles Super. Ct.) ...................................... 13, 15

*Rivali v. Shutterfly, LLC et al.*,
   No. 37-2023-00019221 (San Diego Sup. Ct. 2023) ............................. 16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................ 26

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016): (1) ................................................ 19

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ....................................................... 23

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ....................................................... 12

*In re Sony Corp. SXRD Rear Projection Television Mktg., Sales*
   *Pracs. & Prods. Liab. Litig.*,
   No. 09-MD-2102 (RPP), 2010 WL 1993817 (S.D.N.Y. May 19,
   2010) ...................................................................................... 25

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................... 9, 10, 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................ 10, 20, 25

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................... 24

*Tran v. Sioux Honey Ass'n, Coop.*,
   No. 8:17-CV-00110-JLS-SS, 2020 WL 905571 (C.D. Cal. Feb. 24,
   2020) ...................................................................................... 18

*U.S. v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ................................................................. 11

*Uschold v. NSMG Shared Serv., LLC*,
   333 F.R.D. 157 (N.D. Cal. Oct. 8, 2019) ............................................... 10

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................. 22

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... 19

*Wershba v. Apple Computers, Inc.*
   91 Cal.App.4th 224 (2001) .................................................................... 14

*White v. Experian Information Solutions, Inc.*,
   803 F.Supp.2d 1086 (C.D. Cal. 2011) ................................................... 14

*Wolin v. Jaguar Land Rover N. Am.*,
   LLC, 617 F.3d 1168 (9th Cir. 2010) ..................................... 19, 21, 22

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................... 22

**Statutes**

Cal. Bus. & Prof. Code § 17501 ................................................................. 19

Cal. Civ. Code §1770(a)(13) ...................................................................... 19

California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750,
   *et seq.* ....................................................................................................... 5

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§
   17200, *et seq.* ......................................................................................... 5

Class Action Fairness Act, 21 U.S.C. § 1332(d)(2) .................................... 5

**Other Authorities**

16 C.F.R. § 233.1(a) ................................................................................... 19

Fed. R. Civ. P. 23 ............................................................................................... *passim*

*Manual for Complex Litigation, Fourth*, § 21.632 (2004) ....................................... 3

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs submit this memorandum in support of the Motion for Preliminarily Approval of Class Action Settlement ("Motion"). The Settlement Agreement[1] ("Settlement" or "SA") and proposed class notice forms are being concurrently filed, as Exhibit 1 to the Declaration of Brandon Brouillette filed in support of Plaintiffs' Motion ("Brou. Decl.").

## I.    INTRODUCTION

After hard-fought litigation that involved extensive discovery, a motion to dismiss, a fully briefed class certification motion, and months of negotiations and mediation with the assistance of an experienced mediator, the parties have reached a proposed Settlement. The proposed Settlement readily meets the "fair, reasonable, and adequate" standard under Federal Rule of Civil Procedure 23(e)(2) for preliminary approval. The key components of the Settlement Agreement include: (1) voucher payments to the class with a minimum of $6 in value up to a maximum of $12 following the submission of a claim form. The aggregate value of these vouchers will be approximately $4,750,000; (2) $475,000 in cash to pay for Settlement Costs, none of which will revert to Defendant; and (3) injunctive relief in the form of inserting text stating "MSRP" next to the strikethrough price on Defendant's website, providing consumers pricing information indicating that any strikethrough pricing does not refer to a former price.

Approval of a class action settlement consists of two steps. First, the Court makes a preliminary evaluation of fairness of the settlement. *Manual for Complex Litigation, Fourth*, § 21.632 (2004). If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members.

---

[1] All capitalized terms refer to defined terms in the Settlement Agreement.

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). As discussed below, in all particulars the proposed settlement falls within the "range of possible approval" and is potentially fair. Indeed, the Settlement is entitled to a presumption of fairness since it was reached through arm's-length bargaining between experienced counsel, after a thorough exchange of formal and informal discovery. The negotiations were at arms-length and the Parties were only able to come to an agreement after completing a full-day mediation session with experienced and well-regarded neutral, Robert A. Meyer Although the mediation did not result in a settlement, Mr. Meyer was able to manage the Parties' expectations and significantly close the gap between each side's respective settlement positions. Thereafter, the Parties were able to finalize the terms of the settlement.

Plaintiffs respectfully submit that the terms of the Settlement Agreement are fair, adequate, and reasonable and warrant preliminary approval and notice to the Class as detailed below. Accordingly, Plaintiff respectfully quests that the Court: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Settlement Class for Settlement purposes; (3) approve the form and content of the forms of Class Notice attached as Exhibits A-B and F to the Settlement Agreement; (4) appoint Plaintiffs Davida Minor and Asha Ayanna as Class Representatives; (5) appoint Brandon Brouillette, Craig W. Straub, and Zachary M. Crosner of Crosner Legal, P.C. as Class Counsel; (6) order Defendant to provide notice to the Settlement Class; (7) appoint Phoenix Settlement Administrators as the Settlement Administrator; and (8) schedule a Final Approval Hearing.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. The Alleged Pricing Scheme

Defendant owns and operates an online store, www.shapermint.com, which sells various shapewear products such as bras, underwear, and leggings. On the website, Defendant uses a strikethrough of a former price to indicate to consumers

that they are purportedly getting a discount from the strikethrough former price. Defendant reinforces the purported discounts with representations such as "Great Deals of the Week, "Warehouse Sale," and statements relating to the percentage of a discount. Plaintiffs allege that Defendant's advertised sale price is not a discounted price at all. Rather, it is alleged that the sale price is merely Defendant's actual price and the non-stop promotion of a themed sales event is merely a marketing gimmick designed to lure consumers into believing they purchased a product that maintains higher perceived value than the price they actually paid. Plaintiffs allege that the advertised "sale" prices are important to consumers as they are more likely to purchase an item if they know they are getting a good deal. While there is nothing wrong with legitimate sales, allegedly fictitious sales that include made-up regular prices, made-up discounts, and made-up expirations are deceptive and violate California consumer protection laws.

**B. Procedural History of the Litigation**

This Action was filed on April 19, 2024, in California Superior Court for the County of Los Angeles. The Action alleges violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. Plaintiffs seek injunctive relief, compensatory damages, punitive damages, and restitution in amounts by which Defendant was allegedly unjustly enriched based on its product sales.

On May 28, 2024, Defendant removed the Action to this Court pursuant to the Class Action Fairness Act, 21 U.S.C. § 1332(d)(2). ECF No. 1. On June 24, 2024, the Court issued a Scheduling Order setting Plaintiffs' deadline to file a motion for class certification 120 days after removal of the action, or September 25, 2024, and a jury trial start date on August 26, 2025. On July 23, 2024, Plaintiffs amended the complaint to add a claim for damages and to include additional factual allegations

which were discovered after further investigation. *See* ECF No. 22.

On July 31, 2024, Defendant filed a motion to dismiss the First Amended Complaint (ECF No. 36), which was stricken (ECF No. 44). On August 7, 2024, Defendant filed a motion to dismiss the First Amended Complaint. *See* ECF No. 46. On September 17, 2024, the Court granted in part and denied in part Defendant's motion to dismiss, dismissing only Plaintiff's request for injunctive relief with leave to amend. On September 23, 2024, Plaintiffs filed a Second Amended Class Action Complaint to conform the allegations with the Court's Order on Defendant's Motion to Dismiss. *See* ECF No. 69.

Discovery was requested early in the action and was strongly contested. From August through September, Defendant made several productions consisting of native sales sheets, customer purchase information, website screen shots, and internal line sheets detailing the pricing methods utilized by Defendant. These productions were the result of numerous meet and confer conferences. The Parties also sought the assistance from the Court concerning the discovery disputes and attended three informal discovery conferences with Magistrate Judge A. Joel Richlin. From September 5, 2024 through September 20, 2024, Plaintiffs deposed five of Defendant's employees including the depositions of persons most qualified pursuant to Federal Rule of Procedure 30(b)(6). In early October, Defendant deposed the Class Representatives.

On October 7, 2024, Defendant answered the First Amended Complaint. ECF No. 76. The Parties fully briefed Plaintiffs' Motion for Class Certification. *See* ECF Nos. 72, 78, 88. The class certification briefing included expert reports related to Plaintiffs' proposed damages model. *See* ECF Nos. 72-11, 78-30. On October 23, 2024, the Court took Plaintiff's Motion for Class Certification under submission. ECF No. 94.

## C. Settlement Negotiations

To broker settlement discussions, the Parties sought the assistance of Robert A. Meyer of JAMS who has extensive experience mediating consumer protection class actions. On October 1, 2024, the Parties attended a pre-mediation conference call with Mr. Meyer, and on October 8, 2024, the Parties held an all-day mediation via videoconference. The Parties were not able to resolve the Action during the mediation. Mr. Meyer continued to oversee the continued negotiations and eventually made a mediator's proposal which was accepted by the Parties.

As noted above, the Parties exchanged discovery, including financial and sales records relevant to the claims and alleged damages. Plaintiffs' Counsel represent that they spent significant time and effort analyzing these detailed records. Plaintiffs hired an expert, Dr. Charles Baum, who prepared an extensive damages methodology. The parties fully briefed Plaintiffs' Motion for Class Certification. The Parties also prepared and exchanged comprehensive mediation briefs that discussed the claims, defenses, and alleged damages in detail, followed by an all-day mediation. The Parties did not reach a settlement but continued to engage in contentious negotiations over the following weeks, until an agreement was finally reached on July 26, 2024. As a result of these lengthy, substantive, and good faith negotiations, Plaintiffs' counsel were able to assess thoroughly the strengths and weaknesses of the claims of the Settlement Class Members, Defendant's marketing practices, and Defendant's defenses.

Based on the above-outlined investigation and litigation, the current state of the law, the expense, burden and time necessary to prosecute the Action through trial and possible appeals, the risks and uncertainty of further prosecution of this Action considering the defenses at issue, the sharply contested legal and factual issues involved, and the relative benefits to be conferred upon the Settlement Class Members pursuant to this Agreement, Plaintiffs and Class Counsel have concluded

that a Settlement with Defendant on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of all known facts and circumstances.

Defendant and Defendant's counsel recognize the expense and length of continued proceedings necessary to continue the Action through trial and through possible appeals. Defendant also recognizes that the expense and time spent pursuing this Action has and will further detract from resources that may otherwise be used to run Defendant's business. While Defendant denies any wrongdoing or liability arising out of any of the facts or conduct alleged in the Action and believes that it has valid defenses to Plaintiffs' claims, Defendant has also determined that the Settlement is fair, adequate and reasonable.

### D. The Settlement

The terms of the Settlement are set forth in the concurrently filed Settlement Agreement. See Brou. Decl., Ex. 1 ("SA"). The Proposed Settlement Class is defined as:

> All individual consumers who, during the Class Period, purchased one or more Class Products from Defendant's website www.shapermint.com at a discounted price below the listed MSRP price listed on the website for personal, family, or household purposes while residing in California.

SA, § I.DD. Excluded from the Settlement Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who validly opt outs of the Settlement in a timely manner; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) anyone who received a full cash refund of the Product(s); and (v) any natural person or entity that entered into a release with Defendant prior to the Effective Date arising from the same representations, advertising, marketing and/or sales on the Defendant's website, www.shapermint.com, underlying the claims in the operative complaint in the Action.

The Settlement provides the class with a minimum voucher of $6 in value up to a maximum of $12 following the submission of a claim form for use on Defendant's website. *See* SA, § III.E.1. The aggregate value of these vouchers will be at least $4,105,854 and estimated by Plaintiffs to be up to approximately $4,700,000. *Id.* Additionally, Defendant will pay $475,000 in cash for Settlement Costs, none of which will revert to Defendant. Defendant has agreed to provide injunctive relief in the form of inserting text stating "MSRP" next to the strikethrough price on its website, providing consumers pricing information indicating that any strikethrough pricing does not refer to a former price. *Id.*, § III.E.4. This text will be viewable as a tooltip by hovering or clicking an icon for more information right next to the strikethrough price. *Id.* The Class release is narrowly tailored to the claims at issue in the litigation. *See id.*, § III.D.

Class Notice will have two primary forms. The first will be by Defendant disseminating notice via emails, by sending Settlement Class Members an email included in the Settlement Agreement. *Id.* § IV.A. The second form of notice will be via the website, which is to be established by the Settlement Administrator and shall be dedicated to the Settlement and contain the Long Form Notice, claim form, a copy of the Agreement, the Preliminary Approval Order, and other supplemental materials. *Id.*, § IV. B.

## III.    ARGUMENT

### A. The Proposed Settlement Warrants Preliminary Approval

The Ninth Circuit has long recognized a strong judicial policy favoring settlement, particularly of complex class actions and has "long deferred to the private consensual decision of the parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 323-24 (C.D. Cal. 2016) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965

(9th Cir. 2009)).[2] Indeed, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 323. Stated differently, a fair, reasonable, and adequate class-action settlement is preferable to the time, cost, and uncertainty of lengthy litigation. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action suits . . ."), *cert. denied*, 459 U.S. 1217 (1983); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). "Preliminary approval is thus appropriate if 'the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Uschold v. NSMG Shared Serv., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. Oct. 8, 2019) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *See also Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness").

"The Ninth Circuit does not follow the approach of other circuits that requires district courts to 'specifically weigh[] the merits of the class's case against the settlement amount and quantify the expected value of fully litigating the matter." *Spann*, 314 F.R.D. at 323-24 (quoting *Rodriguez*, 563 F.3d at 965). Instead, courts in the Ninth Circuit examine "whether the settlement is 'the product of an arms-

---

[2] Internal quotations, brackets, ellipses, and citations omitted unless otherwise indicated.

length, non-collusive, negotiated resolution.'" *Id.* at 324 (quoting *Rodriguez*, 563 F.3d at 965). When it is, courts afford the parties the presumption that the settlement is fair and reasonable." *Id.* (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to attach to a class settlement reached at arm's length negotiations between experienced capable counsel after meaningful discovery")).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

When determining the fairness of a class action, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" and (5) "the extent of discovery completed and the stage of the proceedings."[3] *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same).

### 1. The Strength of Plaintiff's Case

Courts strongly favor settlements because they resolve the inherent uncertainty on the merits, especially in class actions. See *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). The same applies to this action. The Parties continue to disagree about the merits of Plaintiffs' claims, and there is significant uncertainty about the ultimate outcome of Plaintiffs' case should it reach trial. Plaintiffs are confident in the strength of their case, but Defendant thus far has only demonstrated

---

[3] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time.

a willingness and preparedness to litigate this action through trial and any possible appeals.

If litigation were to proceed, Plaintiffs would face substantial hurdles obtaining and keeping a successful verdict and benefit to the class they seek to represent. Federal courts continue to develop procedural hurdles that prevent or limit determination of cases on the merits or full relief. These developments are often unexpected and reflect changes to previously well-established law. The effect of these developments falls disproportionately on class actions, which are more procedure-bound than most other types of cases. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) (novel application of *Erie* Doctrine to consumer protection case by appellate court).

Here, Defendant maintains numerous procedural and substantive arguments. First, Defendant opposed Plaintiff's motion for class certification, asserting numerous arguments, including that the alleged misrepresentations are not subject to common proof and that the products and class members are heterogeneous, and that this matter is inappropriate for class certification. Additionally, class certification be granted, Plaintiffs anticipate that Defendant will file a motion for summary judgment related to its claimed MSRP prices not being deceptive as Plaintiffs have alleged.

Plaintiffs will also have to prove at trial a damages model of the exact dollar amount of damages that they and the class are entitled to as a result of Defendant's pricing scheme, a process that Defendant will fight every step of the way. For example, the Ninth Circuit recently affirmed a summary judgment in favor of the defendant in a similar deceptive sales class action finding that the plaintiff "failed to meet her burden to prove she was entitled to restitution." *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir.). Even if Plaintiffs prevailed at trial, Defendant would likely appeal, creating further uncertainty as to the result.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation and Maintaining Class Action Status Through Trial

The risk, expense, complexity, and duration of the case if litigation continues weighs heavily in favor of settlement approval. The Settlement provides substantial benefits to Class Members. The guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement. *See Hanlon*, 150 F.3d at 1026.

Continued litigation of this matter is time-consuming, expensive, and might not obtain any more than is immediately available to the class through the Settlement at hand here. *Carter v. Anderson Merchandisers*, LP, 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010) (weighing cost, risk, and delay associated with trial in favor of approving settlement); *Lilly v. Jamba Juice Co*., 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015) ((citing *Kim v. Space Pencil, Inc.,* 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (supporting final approval because "without a settlement, Plaintiffs would face further litigation that would not be certain to result in injunctive relief.")

Further, Plaintiffs, while having filed a motion for class certification, have not yet certified this action as a class action. They face immense risks of maintaining this as a class action through trial, as the Court first needs to certify the class. Additionally, Plaintiffs anticipate that Defendant would file a motion for decertification should the class be certified. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement."). There is a significant risk that Plaintiffs would not be able to maintain class-action status throughout trial where, as here, no class has yet been certified. *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 318 (N.D. Cal. 2018).

Further, there is a real risk of the class obtaining nothing at a class trial. The only false pricing class action to go to a jury trial was brought by the City of Los Angeles and two prominent plaintiff class action firms. *See People v. Macy's Inc.*,

No. BC643040 (Los Angeles Super. Ct.). The jury ruled in favor of Macy's leaving the class with nothing.

### 3. The Amount Offered in Settlement

This Settlement provides for meaningful consideration—as explained in Section II.D above, the Settlement provides relief in the form of vouchers to the Class as well as injunctive relief that removes the possibility of Class Members being deceived by the pricing scheme operated by Defendants in the future. Plaintiffs anticipate that the value of these vouchers will be at least $4,700,000. Each class member may receive a $6 voucher without proof of purchase, and up to a $12 voucher with proof of purchase, with a simple claim form to provide proof of purchase.

Notably, these are *not* coupons, as, like in *Barr v. SelectBlinds LLC*, the class members will be receiving not just value off a specific item, but value to spend on any item carried on a website filled with products. *Barr v. SelectBlinds LLC*, 2024 WL 5162609, at *12 (C.D. Cal. Mar. 4, 2024). Additionally, the class members will be receiving the injunctive relief provided by the Settlement.

A settlement is not judged against what plaintiff might recover had she prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998); *White v. Experian Information Solutions, Inc.*, 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011) (rejecting contention settlement was not fair and reasonable even though it represented 99% discount off the maximum value of the claims); see also *Wershba v. Apple Computers, Inc.* 91 Cal.App.4th 224, 246, 250 (2001) ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class

settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.").

In determining whether the amount offered in settlement is fair, a court should compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Using data obtained through formal discovery, Plaintiff estimated Defendant's theoretical maximum exposure is approximately $8.8 million. Brou. Decl., ¶¶ 38-39. These calculations, however, do not apply any risk adjustment to Plaintiff's claims to account for Defendant's multiple factual and legal defenses—of which there are many.

As addressed above, on the class claims, Plaintiffs faced the risk that the claims would not be certified for class treatment, that a certified class could be decertified, or that a jury would decide some or all of the claims lacked merit. Indeed, the only fictitious pricing case to go to trial resulted in a verdict for Defendant. *See People v. Macy's Inc.*, No. BC643040 (Los Angeles Super. Ct.). And, as with any case, a settlement discount was warranted to account for the fact that continued litigation would have resulted in increased costs and attorney's fees, and would have resulted in significant delay while the parties fought over class certification, merits discovery and trial (assuming certification), and potential appeals, all of which would not necessarily result in conferring significant additional benefit to the class.

Plaintiffs and their counsel discounted the value of the class claims consistent with these risks and carefully weighed the likelihood of the class receiving substantially greater benefit if the litigation continued. They concluded—in light of the very real risks discussed above—settlement on the proposed terms, without further prolonged and costly litigation, was in the best interests of the class. Brou. Decl., ¶¶ 28-37, 41.

This Settlement compares favorably to other similar settlements, which weighs in favor of approval. *Habberfield v. Boohoo.com USA, Inc*., No. 2:22-cv-03899-GW-JEM (C.D. Cal. 2023) ($10 gift cards to Defendant's website to the class and injunctive relief); *Aberl, et al. v. Ashley Global Retail, LLC*, No. 37-2023-00011536 (San Diego Sup. Ct. 2023) (approving settlement where class members must make a claim form for a voucher for use at Defendant's stores with no injunctive relief); *Rivali v. Shutterfly, LLC et al*., No. 37-2023-00019221 (San Diego Sup. Ct. 2023) (approving settlement where class members must submit a claim form to be included in distribution of vouchers); *In re: Fight Pass Auto-Renewal Litigation*, No. 2:23-cv-00802-CDS-EJY (D. Nev. Jan. 1, 2025) (preliminarily approving settlement where class members receive subscription credit or a prorated cash payment of up to $9.99).

Here, Class Members not only do not have to submit a claim form to be eligible for a voucher at all, but rather only for an increased voucher amount, and will automatically receive the value of the injunctive relief which will remedy any issues with the pricing scheme on Defendant's website. The proposed Settlement distributes without the need to file a claim form, unlike *Aberl* and *Rivali*, pays a similar amount to *Habberfield*, and contains important injunctive relief which halts the alleged deception. Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

### 4. The Extent of Discovery Completed and Settlement Negotiations

Courts also evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs, by and through their counsel, has conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (i) review of

discovery produced by Defendant regarding its pricing of its products; (ii) numerous depositions including those of Defendant's employees and Plaintiffs; and (iii) investigation and review of publicly available information regarding Defendant and their pricing scheme.

Additionally, as explained in Sections II.C.-D. above, the proposed Settlement is the product of a lengthy negotiation process conducted by experienced class-action counsel. Settlement discussions did not commence until August 2024, after Plaintiffs' counsel had conducted substantial investigation and discovery. The parties continued to engage in extensive formal and informal discovery efforts, multiple discovery motions, and the briefing of a motion for class certification and before reaching an agreement with the help of the Mediator. *See* Brou. Decl. ¶¶ 8-15.

As a result of their extensive efforts during the litigation, the parties (each of whom are represented by experienced, capable counsel) were well-informed about the issues in this case before and during settlement discussions. *See id*. ¶ 27-41. The parties came to the bargaining table with vastly different views of the merits and value of the claims and defenses, which is only part of the reason settlement negotiations took months to complete. Consequently, every material issue underwent intensive scrutiny and discussion before it became part of the Settlement Agreement, and the time, effort, and resources expended on those efforts paid off.

After reaching agreement on all material terms of the relief to the proposed Class, the parties began negotiating the attorneys' fees and litigation expenses incurred by Plaintiffs' counsel, service awards for the proposed Class Representatives, and a number of other related issues. *See* Brou. Decl. ¶ 16. As discussed in Section II.D., above, the Mediator not only participated in various aspects of the negotiations, he resolved the issues by making a mediator's proposal that both sides agreed to accept. *Id.* Thus, in addition to being devoid of overt signs

of collusion, the proposed Settlement also lacks any "subtle signs" of collusion that concerned the Ninth Circuit in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), and, more recently, in *Briseno v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021) and *Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021).

Thus, the proposed Settlement is the product of well-informed, arms'-length, hotly-contested negotiations, not collusion. And the absence of collusion, the amount of discovery, and the arm's-length nature of the negotiation resulting in this proposed Settlement entitle it to a presumption of fairness. *See, e.g., Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) ("'A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair'") (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

## B. The Court Should Certify the Settlement Class

### 1. The Settlement Class Satisfies All Rule 23(a) Requirements

#### a. Numerosity is Satisfied

Rule 23(a)(1) requires that the class be so numerous, joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no fixed numerical threshold, "[i]n general, 'classes of forty or more are considered sufficiently numerous.'" *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-CV-00110-JLS-SS, 2020 WL 905571, at *3 (C.D. Cal. Feb. 24, 2020) (internal citations omitted). Here, the proposed Settlement Class consists of 644,385 purchasers.

#### b. Commonality is satisfied

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

(9th Cir. 1998)). Quantitatively, "even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). Qualitatively, the inquiry is whether, at the proper time, the common question is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

There are at least three predominating questions which will "generate common *answers* apt to drive the resolution of the litigation." *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016): (1) Does Defendant's pricing violate the FAL because it advertises a former price but does not sell the Products at the former price within 90 days immediately preceding the advertising? (Bus. & Prof. Code § 17501); (2) Does Defendant's pricing violate the FTCA which prohibits an "advertiser" from using former price advertisements unless "the former price is the actual, bona fide price at which the article was offered to the public *on a regular basis for a reasonably substantial period of time*"? (16 C.F.R. § 233.1(a));[4] and (3) Has Defendant made misleading statements concerning the amounts of price reductions? (Cal. Civ. Code §1770(a)(13)). These shared legal and factual issues satisfy the commonality requirement. *See, e.g.*, *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) ("The district court correctly concluded that whether a defect existed and whether Ford had a duty to disclose the defect were both questions common to the class under Rule 23(a)(2)"); *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (commonality "easily satisf[ied]" where claims "involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model").

### c.  Typicality is Satisfied

---

[4] A violation of the FTCA is a violation of the Unfair Competition Law ("UCL"). *Inga v. Bellacor.com, Inc.*, 2020 WL 5769080, at *3 (C.D. Cal. July 17, 2020) (collecting fictitious pricing cases).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality does not require that the representatives' claims be identical, but only that they are "reasonably co-extensive with [the claims] of absent class members." *Hanlon*, 150 F.3d at 1020. The named Plaintiffs and Class Members each purchased a product from Shapermint under the pricing scheme in the Class Period and the named Plaintiffs' claims arise from the same set of facts and legal issues as the claims of other Class Members. *See* ECF Nos. 72-20 and 72-23. As a result, the Settlement Class satisfies typicality under Rule 23(a)(3).

### d. Adequacy of Representation is Satisfied

"Adequacy" requires that a class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two questions are relevant to the analysis: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Here, the answers to these questions are "No" and "Yes," respectively.

First, for the reasons discussed in Section III.A., above, the named Plaintiffs' interests do not conflict with those of other Class Members and there is no preferential treatment. Second, Plaintiffs have retained experienced class-action counsel who have no conflicts with class members. *See generally* Brou. Decl. ¶¶ 50-62; *see also id.* at Ex. 2 (firm resume). To assess counsel's adequacy, the Court must consider the following factors:

'(i) the work counsel has done in identifying or investigating potential claims

in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Class Counsel here collectively have decades of experience successfully litigating class actions and/or other forms of complex litigation. *See* Brou. Decl. ¶¶ 50-62. Counsel have also devoted considerable time effort, and resources to the prosecution of this lawsuit since its inception, and will continue to devote the necessary resources and diligence required to bring this action to a successful conclusion. *See Id.* ¶¶ 4-17. Accordingly, Plaintiffs respectfully submit that adequacy is satisfied.

### 2. The Proposed Settlement Class Satisfies Rule 23(b)

A settlement class may be certified if the proponent demonstrates that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b). The ultimate question in that regard is '"whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wolin*, 617 F.3d at 1172. Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, the Settlement Class is comprised of purchasers of Shapermint products and each of the claims is predicated on the same conduct – the pricing scheme used by Defendant. Thus, the proposed Settlement Class is cohesive and their claims can be resolved on a representative, rather than on an individual, basis. Accordingly, predominance is satisfied.

Rule 23's superiority requirement tests whether "the class action is the most

efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin,* 617 F.3d at 1175-76 (internal citations omitted). Whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy involves an assessment of the following factors: (a) the class members' interest in individually controlling separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). *See also Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190-92 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id*. at 1190. *See also Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

Here, the products are clothing articles with prices that are approximately $20. *See* ECF No. 1-1 at ¶¶ 10, 23, 41, 43. While the amounts may be material to individual consumers, it is not nearly enough to justify the enormous cost of litigating an individual case against Shapermint, which possesses significantly more resources than any individual consumer. *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (citation and internal quotation marks omitted). These facts support a determination that Class Members have no incentive to individually control the prosecution of separate

actions, thereby satisfying Rule 23(b)(3)(A) and 23(b)(3)(B), and the remaining criteria relate to the manageability of a litigation class, which is inapplicable to the certification of a settlement class because, "by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F. 3d 539, 556 (9th. Cir 2019). Accordingly, superiority is met as well.

### C. Proposed Class Counsel and Class Representatives Should Be Appointed for the Settlement Class

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). For the reasons set forth above, Plaintiffs respectfully request that this Court appoint Brandon Brouillette, Craig W. Straub and Zachary M. Crosner as Class Counsel pursuant to Rule 23(g)(1) and appoint Plaintiffs Davida Minor and Asha Ayanna as Class Representatives.

### D. The Proposed Class Notice Distribution Plan and Content Satisfies Due Process and Rule 23

The parties propose that the Court approve their selection of Phoenix Settlement Administrators as Settlement Administrator, and to approve the parties' proposed Class Notice plan, which requires Defendant to send a direct email notice to Class Members, as set forth in the Settlement Agreement. See SA § IV; Declaration of Jodey Lawrence ("Notice Decl."), Ex. B.[5]

The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). With respect to the ***method*** of notice, individual notice is required only as to those "[class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Indeed, there is no statutory or due process requirement that all Class Members actually receive notice. *See, e.g., Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (Rejecting argument that due process requires actual receipt of notice: "We therefore

---

[5] The Notice Provider's proposed duties are described in the Settlement Agreement. *See* SA § IV.

conclude that the appropriate question remains, as we put it in *Victor Technologies,* 'what notice is reasonably certain to inform the absent members of the plaintiff class,' and the appropriate standard is the 'best notice practicable' . . .). Where individual notice to all is impracticable, publication notice may be the best notice practicable. *E.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

The parties' proposed Class Notice distribution program includes, ***both*** email notice ***and*** website Notice, thus it easily satisfies due process and subparagraphs (c) and (e) of Rule 23. Lawrence Decl., ¶ 14.

- **E-mail Notice (SA, Ex. A)**. Defendant shall provide for Email Notice by sending an email substantially in the form of Exhibit A of the SA to the email addresses for Settlement Class Members identified by Defendant's records. Defendant is in possession of approximately 684,309 such email addresses. This contact information may be shared with the Settlement Administrator for the administration of the Claim Forms but not Class Counsel.

- **Long Form Notice (SA, Ex. B)**. The parties have prepared a detailed Long Form Notice, which will be available for download on the Settlement Website (discussed below).

- **Settlement Website**. Notice provider will also establish a dedicated, interactive settlement website at www.shapermintsettlement.com. *See* SA § IV.B. This website will serve as an important component of the notice program, while also performing other essential functions, such as providing a place where Class Members can electronically submit Claim Forms; seek answers to questions about the proposed Settlement; obtain litigation updates and relevant dates; download case materials, including court documents and orders. *See* SA § IV.B.

- **Toll-free Number.** The Settlement Administrator shall establish and host an automated case-specific toll-free number to allow Class Members to learn

more and to request further information about the Action.

Similar class notice distribution programs have been approved in class action settlements where the claims are the result of ecommerce. In particular, the Parties' plan to provide email notice sent by Defendant is "particularly suitable in this case, where Settlement Class Members' allegations arise from their visits to [Defendant's website] . . . demonstrating that the Settlement Class members are familiar and comfortable with email and the Internet." *Browning v. Yahoo! Inc.*, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) (approving class notice procedure where Defendant ConsumerInfo.com was responsible for ensuring email notice was sent to class members); *Cranney v. Carriage Servs., Inc*., 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (permitting defendant to provide direct notice of opt-in class through email); *Kelly v. Phiten USA, Inc*., 277 F.R.D. 564, 569 (S.D. Iowa 2011) (approving notice plan where "[n]otice was displayed on [defendant's] Facebook page, which delivered individual e-mail notification to its more than 75,000 fans and also appeared on each fan's Facebook homepage."); *In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 09-MD-2102 (RPP), 2010 WL 1993817, at *5 (S.D.N.Y. May 19, 2010) (approving of notice sent by defendant which was "sent by direct mail or email to all members of the settlement class for whom Sony has obtained contact information"); *Lane v. Facebook, Inc*., No. C 08-3845 RS, 2010 WL 9013059, at *2 (N.D. Cal. Mar. 17, 2010)(approving email notice sent by Facebook); *Evans v. Linden Rsch., Inc*., 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013) (approving notice plan with direct email notice); *Staton*, 327 F.3d at 947 (notice provided by Defendant was approved). Additionally, each version of the notices direct Class Members to the dedicated Settlement Website, where they can download or call a toll-free number to obtain a copy of the Long Form Notice, which contains more detailed information about the proposed Settlement and a copy of the release. *See* SA, Ex. B

With respect to the ***content*** of class notice, it is sufficient if it "adequately apprise[s] class members of all material elements of the settlement agreement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Moreover, notice must provide the following information, in "plain, easily understood language" describing

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion;(vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In addition, the notice must inform the class of class counsel's request for an award of attorneys' fees and reimbursement of costs. Fed. R. Civ. P. 23(h)(1).

Like the proposed distribution plan, the content of the proposed Class Notices satisfies the requirements of Rule 23 and due process. The parties have drafted two versions of the Class Notices: The Long-Form Notice found on the website and the email notice. *See* SA, Exs. A-B. The various versions differ in the amount of detail they provide (with the Long Form Notice providing the most complete information), but ***all*** versions of the Class Notices are written in plain English and inform Class Members about the nature of the action; the amount of the Settlement Fund; the definition of the settlement Class; the right to object or opt-out; the right to appear at the Final Fairness Hearing; the fact that the Settlement will be legally binding unless a Class Member opts out; and the potential amount of fees and costs sought by Class Counsel which must also be approved by the Court. SA, Ex. B at 11. Thus, the Class Notices satisfy Rules 23(c)(2)(B) and 23(h)(1) because they fully inform the Class Members of the lawsuit and the proposed Settlement and provides them with the necessary information to make an informed decision. *See Rodriguez v. W.*

*Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) ("In our view, the Notice contains adequate information, presented in a neutral manner, to apprise class members of the essential terms and conditions of the settlement.").

Plaintiffs respectfully submit that the proposed Class Notice content and distribution plan as described in the Settlement Agreement and in the Notice Decl. meet the requirements of due process and Rule 23 and constitute the best notice practicable under the circumstances.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

Dated:  July 14, 2025

CROSNER LEGAL, P.C.

By:  */s/ Brandon Brouillette*
     Brandon Brouillette
     Craig W. Straub
     Zachary M. Crosner

     Attorneys for Plaintiffs
     DAVIDA MINOR and ASHA
     AYANNA

### **L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this memorandum complies with the page limit set by Court order dated May 30, 2024. *See* ECF No. 9 (Standing Order) at ¶ 5(c) (setting page limit as 25 pages for motions).

Dated:  July 14, 2025

By:  */s/ Brandon Brouillette*
     Brandon Brouillette