Brandon Brouillette (SBN 273156)
bbrouillette@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
**CROSNER LEGAL, P.C.**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-763
Fax: (310) 510-6429

Attorneys for Plaintiffs Davida Minor
and Asha Ayanna

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

DAVIDA MINOR and ASHA AYANNA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FAVORITE WORLD, LLC,

Defendant.

Case No. 2:24-cv-4425-JFW-AJR

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Judge: Hon. John F. Walter
Date: December 15, 2025
Time: 8:30 AM
Courtroom: 7A

*Complaint. Filed: April 19, 2024*
*Notice of Removal: May 28, 2024*
*FAC Filed: July 3, 2024*
*Trial Date: August 26, 2025*

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 15, 2025, at 8:30 a.m., in Courtroom 7A before the Honorable John F. Walter in the United States District Court for the Central District of California, Southern Division, 411 West Fourth Street, Santa Ana, California, 92701, Plaintiffs Davida Minor and Asha Ayanna ("Plaintiffs"), individually and on behalf of the proposed Settlement Class will and hereby move for final approval of the class action Settlement Agreement and attorneys' fees, costs, and class representative service awards.

Plaintiffs respectfully move the Court for entry of an Order substantially similar to the concurrently filed Proposed Order Granting Final Approval of Class Action Settlement which: (1) grants final approval of the Settlement, and finds the Settlement to be fair, reasonable, and adequate; (2) confirms certification of the Settlement Class for Settlement purposes; (3) finds completed Class Notice was the best practicable notice under the circumstances and satisfied all Constitutional and other requirements; (4) releases the Released Claims of Settlement Class in accordance with the terms of the Settlement Agreement; (5) enters judgment and dismisses the action with prejudice as provided for by the Settlement Agreement; (6) awards service awards to the Class Representatives in the amount of $5,000 each to Class Representatives Davida Minor and Asha Ayanna; and (7) grants the reimbursement of attorney costs of $24,998.22, the reimbursement for settlement administration expenses of $58,950.00, and awards the remainder of the $475,000 Settlement Cost fund, or $381,051.78, in attorneys' fees to Crosner Legal PC.

This motion is based upon this notice of motion, Plaintiffs' memorandum in support of this motion and its accompanying documents and declarations, the previously filed motion for preliminary approval and accompanying documents and declarations (ECF Nos. 109, 109-1 through 109-13, 110, 111), the complete file and record in this action, any of the evidence on file with the Court in support of this

-i-

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

motion during the hearing, and on such other written and oral argument presented to the Court.

Dated: November 17, 2025

CROSNER LEGAL, P.C.

By: */s/ Brandon Brouillette*
Brandon Brouillette
Craig W. Straub
Zachary M. Crosner

Attorneys for Plaintiffs
DAVIDA MINOR and ASHA AYANNA

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

# **TABLE OF CONTENTS**

NOTICE OF MOTION .................................................................................................... i

I.  INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ......................... 1

    A.  The Alleged Pricing Scheme ................................................................... 1

    B.  Procedural History of the Litigation ...................................................... 2

    C.  Settlement Negotiations ......................................................................... 3

    D. The Settlement ......................................................................................... 4

    E. The Court-Approved Class Notice Was Highly Effective ..................... 4

III.  CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23 ....................................................................................................................... 5

IV.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED .......................... 6

V.  THE STANDARDS FOR FINAL APPROVAL ........................................... 6

VI.  THE SETTLEMENT WARRANTS FINAL APPROVAL ........................... 8

    A.  The Arm's-Length Negotiations Between Experienced, Capable Counsel After Meaningful Discovery ..................................................... 8

    B.  The Strength of Plaintiffs' Case ............................................................. 9

    C.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation and Maintaining Class Action Status Through Trial ......... 10

    D.  The Amount Offered in Settlement ..................................................... 11

    E.  The Extent of Discovery Completed and Settlement Negotiations ........................................................................................... 14

    F.  The Reaction of Settlement Class Favors Final Approval ................. 15

    G. The Settlement Treats All Class Members Equally ............................. 16

VII.  CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ..................................................................................................................... 17

    A. The Requested Fee Amount ................................................................. 17

    C. The Requested Fee Award Is Less Than Class Counsel's Lodestar ........ 17

    B. Percentage of the Benefit Method ....................................................... 20

VIII.  CLASS COUNSEL'S EXPENSES ARE REASONABLE ......................... 22

-iii-

X.    CONCLUSION ................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS

# TABLE OF AUTHORITIES

**Cases**

*Aberl, et al. v. Ashley Global Retail, LLC*,
No. 37-2023-00011536 (San Diego Sup. Ct. 2023) ..................................... 13, 22

*Barr v. SelectBlinds LLC*,
2024 WL 5162609 (C.D. Cal. Mar. 4, 2024) ........................................... 9, 11, 20

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ................................................................... 15

*Carter v. Anderson Merchandisers, LP*,
2010 WL 144067 (C.D. Cal. Jan. 7, 2010) ................................................... 10

*Castellon v. Penn-Ridge Transp., Inc.*,
2020 WL 7786659 (C.D. Cal. Nov. 3, 2020) ................................................ 20

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ........................................................... 6

*Chowning v. Kohl's Dep't Stores, Inc.*,
735 F. App'x 924 (9th Cir.) ..................................................................... 9, 21

*Churchill Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..................................................................... 15

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................... 7

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) ............................................................... 17

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ..................................................................... 17

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................... 15

*Habberfield v. Boohoo.com USA, Inc.*,
No. 2:22-cv-03899-GW-JEM (C.D. Cal. 2023 ............................................... 13

*Habberfield v. Boohoo.com USA, Inc.*,
No. 2:22-cv-03899-GW-JEM (C.D. Cal. 2023) ............................................... 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................... 6, 10, 18

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ......................................................................... 22

*Hartless v. Clorox Co.*,
 273 F.R.D. 630 (S.D. Cal. 2011), *aff'd*, 473 F. App'x 716 (9th Cir. 2012)........20

*In re Bluetooth*,
 654 F.3d 935 (9th Cir. 2011) ...................................................................... 15, 18

*In re HP Inkjet Printer Litigation*,
 716 F.3d 1173 (9th Cir. 2013) ............................................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) .............................................................. 12, 14, 15

*In re Netflix Privacy Litig.*,
 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................6

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................16

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) .............................................................................20

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ...............................................................................20

*In re Stable Rd. Acquisition Corp.*,
 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ..................................................16

*In re: Fight Pass Auto-Renewal Litigation*,
 No. 2:23-cv-00802-CDS-EJY (D. Nev. Jan. 1, 2025)................................. 14, 22

*Kim v. Allison*,
 8 F.4th 1170 (9th Cir. 2021) ..............................................................................15

*Linney v. Cellular Alaska Partnership*,
 151 F.3d 1234 (9th Cir. 1998) ...........................................................................12

*Littlejohn v. Copland*,
 819 F. App'x 491 (9th Cir. 2020) .......................................................................18

*McClellan v. SFN Group, Inc.*,
 2012 WL 2367905 (N.D. Cal., June 21, 2012) ...................................................7

*Morris v. Lifescan, Inc.*,
 54 F. App'x 663 (9th Cir. 2003) .........................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................15

*Netlist Inc. v. Samsung Electronics Co. Ltd.*,
 341 F.R.D. 650 (C.D. Cal. Jun. 13, 2022) .........................................................19

*Nozzi v. Hous. Auth. for the City of Los Angeles*,
 2018 WL 1659984 (C.D. Cal. Feb. 15, 2018) ....................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................. 6, 7

*OWLink Tech., Inc. v. Cypress Tech. Co.*,
   2023 WL 9061081 (C.D. Cal. Dec. 12, 2023) ........................................ 19

*People v. Macy's Inc.*,
   No. BC643040 (Los Angeles Super. Ct.) .............................. 10, 13, 21

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ....................................... 16

*Rivali v. Shutterfly, LLC et al.*,
   No. 37-2023-00019221 (San Diego Sup. Ct. 2023) ....................... 14, 22

*Rodriguez v. West Publ'g Co.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................ 7, 8, 23

*See In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................... 10

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................... 8

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................................... 7, 8

*State of Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ................................................................... 20

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ........................................................... 20, 22

*U.S. v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ..................................................................... 9

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ..................................................................... 7

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................. 21

*Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) .......................................................... 20

*Wershba v. Apple Computers, Inc.*,
   91 Cal.App.4th 224 (2001) ...................................................................... 12

*White v. Experian Information Solutions, Inc.*,
   803 F.Supp.2d 1086 (C.D. Cal. 2011) .................................................... 12

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................................... 8

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS

**Other Authorities**

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* § 11:42 (4th ed.2002) ................................................... 8

**Rules**

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................... 16

**Statutes**

28 U.S.C. § 1715 ........................................................................................................ 7

28 U.S.C. § 1712 ............................................................................................... 18. 20

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS

## I.    INTRODUCTION

After hard-fought litigation that involved a motion to dismiss, extensive pre-certification discovery, the retention of competing experts, a fully-briefed class certification motion, mediation with the assistance of an experienced mediator, and months of negotiations, the parties have reached a Settlement of this class action. Plaintiffs now seek final approval.

The Settlement[1] provides: (1) voucher payments of at least $6 to all Settlement Class Members and up to $12 depending on the submitted claim, with an aggregate voucher value of $4,292,292;[2] (2) a $475,000 cash fund to cover Settlement Costs—including attorneys' fees, expenses, and administration—with no reversion to Defendant; and (3) injunctive relief requiring Defendant to add "MSRP" next to any strikethrough price on shapermint.com to clarify that such pricing does not reflect a former price.

On July 31, 2025, the Court granted preliminary approval, finding the Settlement "fair, reasonable, and adequate" because it was the product of arm's-length negotiations, fell within the range of approval, and contained no obvious deficiencies.  ECF No. 113. Nothing has changed that would affect that conclusion. The Class Notice program was robust, and the reaction was overwhelmingly positive, with only six opt-outs and no objections. Admin. Decl. ¶ 8.

Plaintiffs respectfully submit that the Settlement readily meets the "fair, reasonable, and adequate" standard and it should be finally approved.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. The Alleged Pricing Scheme

---

[1] All capitalized terms refer to defined terms in the Settlement Agreement ("Settlement" or "SA") (ECF No. 109-2).

[2] *See* concurrently filed Declaration of Taylor Mitzner regarding settlement notice administration ("Admin. Decl.") at ¶ 11.

Defendant operates www.shapermint.com, an online retailer of women's undergarments, shapewear products, and related accessories. The website presents products with strikethrough "former" prices and accompanying sale pricing, often reinforced by promotional themes such as "Great Deals of the Week" and "Warehouse Sale" and by stated percentage discounts. Plaintiffs alleged these sale prices were not genuine discounts but Defendant's regular prices, and that the continuous promotional framing was a marketing tactic designed to mislead consumers into believing they were receiving a bargain. Plaintiffs further contend that fictitious reference prices and perpetual sales are deceptive and violate California consumer protection laws.

### B. Procedural History of the Litigation

Plaintiffs filed this Action on April 19, 2024, in Los Angeles Superior Court, asserting claims under the Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") and seeking injunctive relief, damages, punitive damages, and restitution. Defendant removed the case on May 28, 2024, under the Class Action Fairness Act ("CAFA"). ECF No. 1.

The Court set a class certification deadline of September 25, 2024, and a jury trial for August 26, 2025. Plaintiffs amended the complaint on July 23, 2024. ECF No. 22. Defendant filed motions to dismiss (ECF Nos. 36, 46), and on September 17, 2024, the Court granted in part and denied in part, dismissing only Plaintiffs' request for injunctive relief with leave to amend. Plaintiffs filed the operative Second Amended Complaint on September 23, 2024. ECF No. 69.

Discovery was heavily contested. Between August and September, Defendant produced sales data, customer purchase information, screenshots, and internal pricing sheets following multiple meet-and-confers and three informal discovery conferences before Magistrate Judge Richlin. Plaintiffs deposed five Defendant employees, including Rule 30(b)(6) witnesses; Defendant deposed the Class

Representatives in early October.

Defendant answered the First Amended Complaint on October 7, 2024. ECF No. 76. The Parties fully briefed class certification (ECF Nos. 72, 78, 88), including expert damages analyses (ECF Nos. 72-11, 78-30). On October 23, 2024, the Court took the motion under submission. ECF No. 94.

### C. Settlement Negotiations

The Parties engaged in extensive, detailed, and adversarial settlement negotiations. To facilitate discussions, they retained mediator Robert A. Meyer of JAMS, a highly experienced class action mediator who though years of experience is well versed in the claims alleged in this case. On October 1, 2024, the Parties participated in a pre-mediation conference with Mr. Meyer, followed by an all-day videoconference mediation on October 8, 2024. That session did not resolve the case. Subsequent discussions and negotiations continued through Mr. Meyer. The Parties exchanged and analyzed substantial discovery, including financial records relevant to Plaintiffs' theory of damages. Plaintiffs' counsel conducted a detailed review of these materials and retained an economic expert, Dr. Charles Baum, who developed a comprehensive damages model. Both sides also prepared extensive mediation briefs addressing the claims, defenses, and alleged damages. Despite these efforts, the Parties remained far apart and continued to engage in negotiations over the following weeks while simultaneously completing the briefing on Plaintiffs' motion for class certification.

After additional discussions and further evaluation of risks—including the fully briefed class certification motion, the factual record developed through depositions, and the uncertainties of continued litigation—Mr. Meyer issued a mediator's proposal. The Parties accepted his proposal on July 26, 2024, resulting in the Settlement now before the Court.

Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, and

-3-

adequate in light of the evidence, the risks and expense of further litigation and appeal, and the benefits secured for the Class. Defendant, while denying all wrongdoing, likewise concluded that settlement is fair and reasonable given the costs and distraction of continued litigation.

### D. The Settlement

The complete terms are set forth in the Settlement Agreement. ECF No. 109-2. The proposed Settlement Class includes all California consumers who purchased Class Products from www.shapermint.com at a listed discount from the MSRP during the Class Period. SA § I.DD. The Settlement provides: (1) Settlement Class Members receive vouchers valued between $6 to $12 with an aggregate voucher value of $4,292,292. Admin Decl. ¶ 11; (2) a cash Settlement Cost Fund will pay $475,000 for Settlement Costs—including attorneys' fees, expenses, incentive awards, notice and administration—with no reversion to Defendant;[3] (3) injunctive relief requiring Defendant to add an "MSRP" notation next to any strikethrough price on its website, with additional explanatory information accessible via tooltip (SA § III.E.4); (4) the class release is narrowly limited to the claims asserted (SA § III.D); and a robust Settlement Notice program.

### E. The Court-Approved Class Notice Was Highly Effective

Class Notice was excellent, readily meeting Federal Rule of Civil Procedure 23(e)(2)(C)(ii). Settlement Class Members received direct notice via email and through an interactive settlement website, which provided the Long-Form Notice (downloadable), a toll-free number for assistance, plain-language instructions on how to submit a claim, opt out, or object, and access to key court documents—including the Settlement Agreement, the operative Complaint, and the Court's

---

[3] Should any amount of the Settlement Cost Fund exceed the amount needed to for Settlement Costs, any remaining amounts will be distributed to the Cy Pres recipient, National Consumer Law Center (NCLC). SA at §§ I.N., V.H.4.

Preliminary Approval Order—all of which could be downloaded.[4] *See* Admin Decl. ¶¶ 2, 3-5, 11; Brou. Decl. ¶ 8.

Email Notice was sent to all 714,815 Settlement Class Members, of which approximately **94.1%** were successfully delivered.[5] *See id.* ¶¶ 4-7; *see also* Declaration of Alejandro Iruleguy ("Iruleguy Decl.") ¶ 4. Settlement Class reaction confirms the Notice program's effectiveness: only six requests for exclusion and zero objections were received, meaning **99.99%** of the Settlement Class chose to remain in the Settlement. Admin. Decl. ¶¶ 8, 10. These results demonstrate a highly successful Class Notice fully consistent with due process. Based on the current volume of claims submitted and inquiries from Settlement Class Members, the combined, approximate cost to provide Class Notice and handle the settlement administration is $58,950.00. Admin. Decl. ¶ 12, Ex. B.

## III.    CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23

Due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, as explained above

---

[4] For CAFA notice, 28 U.S.C. § 1715, the Settlement Administrator mailed notice of the Settlement to governmental authorities on August 11, 2025. Admin Decl. ¶ 3.

[5] The Settlement Administrator analyzed the list of undeliverable Email Notices provided by Defense Counsel and determined that many addresses contained obvious domain misspellings (e.g., "gmil.com" instead of "gmail.com"). Admin Decl. ¶ 6. The Settlement Administrator manually corrected the most common domains—such as Gmail and Yahoo—and successfully re-sent those Notices. *Id.* The remaining undeliverable addresses involved obscure or unrecognizable domains that could not be reliably corrected. *Id.*

-5-

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

in Section II.E, the Class Notice included direct Email Notice and an interactive settlement website which provided easy access to the Long Form Notice and a description of the claims process, opting out, and objecting to the Settlement. Further, Class Notice directly reached 94.1% of the Settlement Class. *See* Admin Decl. ¶¶ 4-5.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Court's Preliminary Approval Order analyzed the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements to be satisfied, and certified the Settlement Class for settlement purposes. ECF No. 113 at 6-8. Nothing has changed that would affect the Court's ruling on class certification, and no objections to the Settlement have been received. The Court may therefore rely on the same rationale and again find class certification appropriate. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) (court relied on reasoning from preliminary approval order); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) (affirming certification where circumstances had not changed).

## V.    THE STANDARDS FOR FINAL APPROVAL

Pursuant to Rule 23(e), after directing notice in a reasonable manner and before granting final approval, the Court must conduct a fairness hearing and determine whether the settlement, viewed as a whole, is "fair, reasonable, and adequate." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).[6] The Court's role is to determine whether the settlement is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*; *see also*

---

[6] Internal quotations, brackets, ellipses, and citations omitted throughout unless otherwise indicated.

*Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion."). In making its determination, "it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms." *McClellan v. SFN Group, Inc.*, 2012 WL 2367905, at *2 (N.D. Cal., June 21, 2012) (citing *Officers for Justice*, 688 F.2d at 625).

The Ninth Circuit has long recognized a strong judicial policy favoring settlement, particularly of complex class actions and has "long deferred to the private consensual decision of the parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 323-24 (C.D. Cal. 2016) (quoting *Rodriguez*, 563 F.3d at 965). Indeed, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 323. Stated differently, a fair, reasonable, and adequate class-action settlement is preferable to the time, cost, and uncertainty of lengthy litigation. *See, e.g., Officers for Justice*, 688 F.2d at 625 ("This is especially true in complex class action suits . . ."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

As part of the preliminary approval process, the Court has already considered the non-exhaustive factors recognized as guideposts to the "fair, adequate and reasonable" determination: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount achieved or recovered in resolution of the action; (4) the extent of discovery completed, and the stage of the proceedings; and (5) the experience and views of counsel. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). At final approval, the Court

-7-

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

can also consider and "the reaction of the class members to the proposed settlement." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1254 (C.D. Cal. 2016) "The Ninth Circuit does not follow the approach of other circuits that requires district courts to 'specifically weigh[] the merits of the class's case against the settlement amount and quantify the expected value of fully litigating the matter." *Spann*, 314 F.R.D. at 323-24 (quoting *Rodriguez*, 563 F.3d at 965). Instead, courts in the Ninth Circuit examine "whether the settlement is 'the product of an arms-length, non-collusive, negotiated resolution.'" *Spann*, 314 F.R.D. at 324 (quoting *Rodriguez*, 563 F.3d at 965). Each of the above factors supports approval of the Settlement.

## VI.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The above factors weigh in favor of final approval. Rather than repeat the analysis previously submitted (ECF Nos. 109 and 110), each fairness factor is briefly addressed below.

### A. The Arm's-Length Negotiations Between Experienced, Capable Counsel After Meaningful Discovery

The Settlement was arrived at through genuine arm's length bargaining after a developed factual record that allowed the Parties to have a "clear view of the strengths and weaknesses of their case[]." *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:42 (4th ed.2002) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); *Rodriguez*, 563 F. 3d at 965 ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]").

As discussed above, § II.A–B, the circumstances surrounding the Settlement support the finding that the Settlement is non-collusive and procedurally fair. For one, a well-respected and experienced class-action mediator issued a mediator's proposal only after an all-day mediation failed to resolve the case and the Parties

remained far apart despite continued supervised negotiations informed by substantial discovery, expert damages analysis, and detailed mediation briefs. The Parties were also well informed, having engaged in heavily contested discovery—including multiple conferences before Magistrate Judge Richlin, extensive document production, numerous depositions of key witnesses and the Class Representatives— and full briefing of class certification supported by expert damages analyses.

Moreover, the Settlement does not allow for a reversion to Defendant which "weighs in favor of finding that the settlement is the result of serious, informed, and non-collusive negotiations." *Barr v. SelectBlinds LLC*, 2024 WL 5162609, at *5 (C.D. Cal. Mar. 4, 2024). The Settlement is the result of arm's-length negotiations between the Parties and experienced counsel and is therefore entitled to a presumption of reasonableness.

### B. The Strength of Plaintiffs' Case

Plaintiffs addressed the real risks of continued litigation at preliminary approval. *See* ECF No. 109 at 13-14. Courts strongly favor settlement because it eliminates the inherent uncertainty of adjudicating the merits, particularly in class actions. See *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). Here, the Parties continue to dispute the merits, and substantial uncertainty exists as to the outcome if this case proceeded to trial. Plaintiffs remain confident in their claims, but Defendant has made clear it is fully prepared to litigate through trial and appeal. Plaintiffs would also face the challenge of proving a damages model quantifying the exact restitution owed to the Class—an issue Defendant would vigorously contest. Recent decisions, such as *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir.), underscore this risk by affirming summary judgment in a similar deceptive pricing case for failure to prove entitlement to restitution. Even a trial victory would likely result in further delay and risk on appeal. Accordingly, while Plaintiffs believe in the strength of their claims, these substantial risks and uncertainties make settlement

a far more favorable and reliable outcome for the Settlement Class.

### C. The Risk, Expense, Complexity, and Likely Duration of Further Litigation and Maintaining Class Action Status Through Trial

The risk, expense, complexity, and duration of the case if litigation continues weighs heavily in favor of settlement approval. The Settlement provides substantial benefits to Settlement Class Members. The guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement. *See Hanlon*, 150 F.3d at 1026.

Continued litigation of this matter is time-consuming, expensive, and might not obtain any more than is immediately available to the class through the Settlement at hand here. *See Carter v. Anderson Merchandisers*, *LP*, 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010). Further, Plaintiffs, while having filed a motion for class certification, have not yet certified this action as a class action outside the settlement context. They face immense risks of maintaining this as a class action through trial, as the Court first needs to certify the class. Additionally, Plaintiffs anticipate that Defendant would file a motion for decertification should the class be certified. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").

Further, there is a real risk, even if a class were certified, that the class could recover nothing at trial. For instance, the only false-pricing class action which Plaintiffs are aware of that reached a full trial in California—*People v. Macy's Inc.*, No. BC643040 (Los Angeles Super. Ct.)—resulted in a defense verdict. There, the court found that "The People have failed to adduce any competent evidence to its core allegation" that consumers interpret "regular" or "original" reference prices as former prices, concluding instead that "reasonable Macy's consumers ignore these reference prices and perceive them as uninformative." Brou. Decl. Ex 3. Moreover,

-10-

a jury could potentially find in the class's favor but still fail to award any monetary damages.

### D. The Amount Offered in Settlement

This Settlement provides for meaningful consideration—as explained in Section II.D above, the Settlement provides relief in the form of vouchers to the Settlement Class as well as injunctive relief that removes the possibility of Settlement Class Members being deceived by the pricing scheme operated by Defendants in the future. The aggregate voucher value to be provided by the Settlement is $4,292,292.[7] Notably, these are *not* coupons, as, like in *Barr*, the class members will be receiving not just value off a specific item, but value to spend on any item carried on a website filled with products. *Barr*, 2024 WL 5162609, at *12. Additionally, the Settlement Class members will be receiving the injunctive relief provided by the Settlement.

Defendant has already implemented the agreed-upon injunctive relief across all product pages displaying slashed or strikethrough pricing. As shown below, Defendant added an information icon next to the strikethrough price; when a user hovers over the icon, a disclaimer appears stating that "the strikethrough price is the Manufacturer's Suggested Retail Price."

---

[7] This amount includes the 1,153 Claim Forms that were submitted. Admin Decl. ¶ 9.

**Shapermint Essentials Everyday Comfort Straps Wireless Shaping Bra**

⭐⭐⭐⭐⯪ <u>12090 reviews</u>

~~$48.00~~ ⓘ **$32⁹⁹**    **30% OFF - Save $15.00**

The strikethrough price is the Manufacturer's Suggested Retail Price. ✕

52.99   ~~$96.00~~
saving: $43.01

A settlement is not judged against what plaintiff might recover had she prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998); *White v. Experian Information Solutions, Inc.*, 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011) (rejecting contention settlement was not fair and reasonable even though it represented 99% discount off the maximum value of the claims); *see also Wershba v. Apple Computers, Inc*. 91 Cal.App.4th 224, 246, 250 (2001) ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.").

In determining whether the amount offered in settlement is fair, a court should compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Using data obtained through formal discovery, Plaintiff estimated Defendant's theoretical maximum exposure is approximately

$8.8 million—which assumes the Court would accept Plaintiffs' theory of damages. ECF No. 109-1 at ¶ 38. These calculations, however, do not apply any risk adjustment to Plaintiff's claims to account for Defendant's multiple factual and legal defenses—of which there are many.

As addressed above, on the class claims, Plaintiffs faced the risk that the claims would not be certified for class treatment, that a certified class could be decertified, or that a jury would decide some or all of the claims lacked merit. Indeed, the only fictitious pricing case to go to trial resulted in a verdict for Defendant. *See People v. Macy's Inc.*, No. BC643040 (Los Angeles Super. Ct.); Brou. Decl. Ex 3. And, as with any case, a settlement discount was warranted to account for the fact that continued litigation would have resulted in increased costs and attorney's fees, and would have resulted in significant delay while the parties fought over class certification, merits discovery and trial (assuming certification), and potential appeals, all of which would not necessarily result in conferring significant additional benefit to the class. Plaintiffs and their counsel discounted the value of the class claims consistent with these risks and carefully weighed the likelihood of the class receiving substantially greater benefit if the litigation continued. They concluded—in light of the very real risks discussed above—settlement on the proposed terms, without further prolonged and costly litigation, was in the best interests of the class. *See* ECF. No. 109-1 at ¶¶ 28-37, 41-42.

This Settlement compares favorably to other similar settlements, which weighs in favor of approval. *Habberfield v. Boohoo.com USA, Inc*., No. 2:22-cv-03899-GW-JEM (C.D. Cal. 2023) ($10 gift cards to Defendant's website to the class and injunctive relief); *Aberl, et al. v. Ashley Global Retail, LLC*, No. 37-2023-00011536 (San Diego Sup. Ct. 2023) (approving settlement where class members must make a claim form for a voucher for use at Defendant's stores with no

injunctive relief); *Rivali v. Shutterfly, LLC et al*., No. 37-2023-00019221 (San Diego Sup. Ct. 2023) (approving settlement where class members must submit a claim form to be included in distribution of vouchers); *In re: Fight Pass Auto-Renewal Litigation*, No. 2:23-cv-00802-CDS-EJY (D. Nev. Jan. 1, 2025) (preliminarily approving settlement where class members receive subscription credit or a prorated cash payment of up to $9.99). Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is reasonable.

### E.  The Extent of Discovery Completed and Settlement Negotiations

Courts also consider whether class counsel had sufficient information to assess the strengths and weaknesses of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. Here, Plaintiffs' counsel conducted extensive investigation and discovery, including reviewing Defendant's pricing records, taking and defending numerous depositions, examining publicly available information regarding Defendant's pricing practices, and fully briefing the contested motion for class certification.

As described in Sections II.B-D, the Settlement is the product of a lengthy, informed negotiation process conducted by experienced class-action counsel. *See* ECF. No. 109-1 at ¶¶ 16-17, 28-29, 45; Broul. Decl., ¶¶ 12-25, Ex. 2 (firm resume); Straub Decl. ¶¶ 3-5. Settlement discussions began only after substantial discovery and continued alongside ongoing discovery disputes, multiple discovery conferences, and full briefing on class certification, all with the assistance of an experienced mediator. *See* ECF No. 109-1 at ¶¶ 11-17, By the time negotiations commenced, both sides were fully informed of the factual record and the risks of continued litigation. *See id.* ¶¶ 28-43.

After agreeing on all material class relief, the Parties then negotiated attorneys' fees, expenses, and service awards. *See id.* ¶ 16. The mediator ultimately

resolved remaining issues via a mediator's proposal accepted by both sides. This process reflects neither overt nor subtle collusion of the type cautioned against in *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011), *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021), and *Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021). Accordingly, the proposed Settlement is the result of well-informed, arms'-length, and hard-fought negotiations and is entitled to a presumption of fairness.

## F. The Reaction of Settlement Class Favors Final Approval

A favorable reaction by class members to the proposed settlement supports final approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

The terms of the Settlement were provided to each Class Member in the Court-approved Class Notice, including in the forms of Class Notice directly emailed to 714,815 Settlement Class Members. Admin Decl., ¶ 5. There were only six (6) requests for exclusion. *Id.* ¶ 8. No objections were received. That is, 99.99% of the Settlement Class chose to remain in the Settlement. *Id.* ¶ 10. This is a very positive reaction. *See e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (where just a "handful" objected, "[t]he reaction of the class members to the proposed settlement further supports the conclusion that … the Settlement was fair, adequate and reasonable"); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class action settlement where forty-five objections were received out of 90,000 notices); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) ("only 101 out of the over 24,000 who received notice have elected to opt out of the Settlement Class . . . which is a

further indication of the fairness of the Settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The Court received objections from only 3 out of 57,630 potential Class Members who received the notice. By any standard, the lack of objection favors approval of the Settlement."); *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *10 (C.D. Cal. Apr. 23, 2024) ("That only one objection and only four requests for exclusion have been received demonstrates the Settlement Class's positive reaction to the Settlement and supports final approval."). Thus, the favorable reaction of the Settlement Class supports final approval.

## G. The Settlement Treats All Class Members Equally

In addition to the above factors, Rule 23(e)(2) also considers whether "the proposal treats class members equitably relative to each other." *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (citing Fed. R. Civ. P. 23(e)(2)(D)). This Settlement satisfies that standard. Every Settlement Class Member automatically receives a $6 voucher without submitting a Claim Form or taking any action. This guaranteed, baseline benefit ensures that all Class Members receive meaningful tangible relief regardless of the number of products purchased or their ability to locate documentation. At the same time, the Settlement fairly differentiates among Class Members based on the extent of their purchases—precisely the type of proportional, rational distinction courts routinely uphold. Class Members who purchased additional Class Products during the Class Period may submit a simple Claim Form to receive $1 in additional voucher credit for each additional purchase, up to a maximum total voucher of $12. This structure fairly ties the size of the recovery to each Class Member's estimated degree of exposure to the alleged deceptive pricing scheme. Courts consistently approve such tiered or claims-based structures where they reflect real differences in class members' alleged injuries. The process is also equitable because the information required to claim an

-16-

increased award is minimal, and the $6 base award requires no claim submission at all, eliminating concerns about barriers or disparate access to relief. Moreover, the Settlement Awards may be used on any product at shapermint.com, can be combined with other discounts, and remain valid for one year—further ensuring equitable access to the benefit. In addition, the injunctive relief benefits every Class Member equally by requiring Defendant to include an "MSRP" disclosure next to strikethrough prices, a forward-looking change that provides uniform protection to all future Shapermint consumers.

In short, the Settlement provides the same baseline benefit to all Class Members, increases awards in proportion to actual purchases, imposes no reversion to Defendant, and offers injunctive relief that benefits the entire Class equally. These features demonstrate that all Settlement Class Members are treated equitably.

## VII.   CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

Under Ninth Circuit standards, a court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). Class Counsel's fee request is fair and reasonable under either of these methods.

### A. The Requested Fee Amount

The Settlement includes a $475,000 Settlement Cost Fund to cover attorneys' fees, litigation expenses, incentive awards, and notice and administration costs, with no reversion to Defendant. SA, §I.GG. After subtracting the requested incentive awards ($10,000), notice and administration costs ($58,950), and Class Counsel's expenses ($24,998.22), the remaining **$381,051.78** represents Class Counsel's fee request. Brou. Decl. ¶ 30.

### C. The Requested Fee Award Is Less Than Class Counsel's Lodestar

Courts may award attorneys' fees under the "lodestar" method. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020); *see also Hanlon*,

150 F.3d at 1029. The lodestar method is appropriate when a settlement provides injunctive relief. *See, e.g., Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020) (affirming multiplier of 1.489 in injunctive relief settlement where defendant was required to remove a "no artificial flavors" labeling claim from the products)

The lodestar is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates for the region and the attorneys' experience. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941-42; *Hanlon*, 150 F.3d at 1029. Courts may then adjust the lodestar—upward or downward—based on factors such as (i) the quality of representation, (ii) the results achieved, (iii) the complexity and novelty of the issues, and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029.[8] Courts frequently apply a positive multiplier to reflect the significant contingency risk undertaken. *Vizcaino*, 290 F.3d at 1051.

As of November 17, 2025, a fee award $381,051.78 would amount to a *negative* 1.36 multiplier. Class Counsel's current lodestar is $518,890.00, reflecting approximately 696.3 hours spent litigating this matter. Brou. Decl. ¶ 29, Ex. 1. The hourly rates of the primary attorneys—$800 for Zachary Crosner, $750 for Brandon Brouillette and Craig Straub, and $650 for Brandon Hamilton and Kiara Bramasco—are reasonable and consistent with rates regularly approved in this District. Brou. Decl. ¶ 27; Straub Decl. ¶ 7; *OWLink Tech., Inc. v. Cypress Tech. Co.*, 2023 WL

---

[8] In *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1183 (9th Cir. 2013), the Ninth Circuit held that where a settlement provides both coupon relief and non-coupon benefits—such as injunctive relief or other forms of equitable relief—CAFA § 1712(b) applies. Under that subsection, if class counsel's fees are not calculated based on the value or redemption of the coupons, then "any" fee award must be based on counsel's lodestar, i.e., the reasonable hours expended multiplied by reasonable rates. § 1712(b)(1). Here, the requested fee is reasonable based solely on the injunctive relief and negative multiplier alone. *In re HP Inkjet Printer Litigation*, 716 F.3d at 1184–85. If the Court disagrees, then in the alternative, the Court can set attorneys' fees based on the value of the entire settlement. *See* 28 U.S.C. § 1712(c). Under either approach, Plaintiffs' counsel's fee request is reasonable.

-18-

9061081, at *2 (C.D. Cal. Dec. 12, 2023) (approving rates of $1,200 and $900 per hour); *Netlist Inc. v. Samsung Electronics Co. Ltd.*, 341 F.R.D. 650, 675 (C.D. Cal. Jun. 13, 2022) (approving partner rates of $1,160–$1,370 and associate rates of $845–$1,060); *Nozzi v. Hous. Auth. for the City of Los Angeles,* 2018 WL 1659984, at *7 (C.D. Cal. Feb. 15, 2018) (approving senior attorney rates of $1,150, $750, and $765). As set forth in the supporting declarations, these rates are well supported by evidence and applicable caselaw. Brou. Decl. ¶ 27; *see also* Straub Decl. ¶¶ 6-11.

As described in the Brouillette and Straub Declarations, Class Counsel devoted substantial time and resources to prosecuting this deceptive pricing class action. Their work included investigating Defendant's former- and strikethrough-price advertising practices; researching FTC and California pricing law; drafting multiple complaints; engaging in extensive discovery, including reviewing pricing and sales data, participating in multiple discovery conferences before Magistrate Judge Richlin, and taking and defending several key depositions; briefing the motion to dismiss and the class certification motion; working with Plaintiffs' expert on a damages model; preparing comprehensive mediation submissions; participating in an all-day mediation and weeks of mediator-supervised negotiations; drafting the Settlement Agreement and approval papers; coordinating with the Settlement Administrator; and communicating regularly with the Class Representatives throughout the litigation. Brou. Decl. ¶ 10; Straub Decl. ¶ 10.

Counsel's work is ongoing. Class Counsel must still prepare for and attend the Final Approval Hearing, respond to any objections or supplemental filings, oversee the completion of the administration process, assist with claim review issues, and ensure proper distribution of service awards and attorneys' fees and costs. Brou. Decl. ¶ 11.

In sum, the lodestar is based on a reasonable number of hours billed at reasonable rates for this District. Brou. Decl. ¶¶ 27-28. Because the requested fee,

$381,051.78, is less than Class Counsel's $518,890.00 lodestar, no multiplier is requested or needed. The lodestar cross-check therefore confirms the reasonableness of the requested fee.

### B. Percentage of the Benefit Method

Given the injunctive relief obtained and Plaintiffs' counsel's negative lodestar multiplier, the full amount of fees requested may be awarded under the lodestar method. Nonetheless, 28 U.S.C. § 1712(c) provides that, in the alternative, the Court may award fees based on the benefit conferred to the class.

In valuing a settlement, courts look to the benefit *made available* to the class, including notice and administration costs. *See Castellon v. Penn-Ridge Transp., Inc.*, 2020 WL 7786659, at *11 (C.D. Cal. Nov. 3, 2020); *Staton v. Boeing*, 327 F.3d 938, 972 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x 716 (9th Cir. 2012). The Ninth Circuit has established a "presumptively reasonable" benchmark is 25% of the benefit made available. *Barr*, 2024 WL 5162609, at *8 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015); s*ee also State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1995) (affirming 33% fee award); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (same). For settlements below $10 million, fee awards in the 30-50% range are common. *Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297 (N.D. Cal. 1995).

Here, the Settlement provides $4,292,292 in voucher benefits to Settlement Class Members and a $475,000 non-reversionary cash Settlement Costs Fund, including $58,950 for notice and administration. Conservatively valuing only the voucher relief and notice/administration costs, the Settlement makes $4,351,242 available to the Class. The requested fee—$381,051.78—is only 8.76% of the total benefit, far below the Ninth Circuit's 25% benchmark. Courts may adjust the

-20-

benchmark upward or downward based on the *Vizcaino* factors, but such adjustments are reserved for "unusual circumstances." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Here, each factor supports the reasonableness of the requested fee:

**The Results Achieved.** The Settlement provides immediate, guaranteed economic relief to every Class Member and enhanced relief for higher-volume purchasers—benefits tailored directly to the alleged harm. It also delivers meaningful injunctive relief requiring prominent MSRP disclosure for strikethrough prices, ensuring future compliance with consumer protection standards. These results compare favorably to, and in many cases exceed, outcomes in similar fictitious pricing cases.

**The Risks of Litigation.** As explained above, deceptive former-price cases carry substantial litigation risk—including establishing restitution under *Chowning* and the real possibility of a defense verdict, as in *People v. Macy's*. Defendant demonstrated a willingness to litigate aggressively through trial and appeal. Class Counsel faced significant risk in pursuing these claims on a contingent basis with no guarantee of recovery.

**The Skill Required and Quality of Work.** This case required sophisticated analysis of sales data, pricing practices, FTC guidelines, and damages/restitution methodologies which require the use of experts, as well as contested discovery, depositions, and class certification briefing. Class Counsel litigated efficiently and effectively against highly experienced defense counsel from Ervin Cohen & Jessup LLP, a respected firm known for complex litigation. Straub Decl. ¶ 12.

**The Contingent Nature of the Fee.** Class Counsel undertook this case with no upfront payment, expended substantial hours and out-of-pocket costs, and bore the risk of non-payment—especially significant given the unsettled legal landscape of fictitious pricing claims and the high likelihood of appeal even if Plaintiffs

prevailed at trial.

**Awards in Similar Cases.** The Settlement also compares to other recent deceptive-pricing and consumer settlements. *See*, *e.g.*, *Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW-JEM (C.D. Cal. 2023) (providing $10 gift cards and injunctive relief); *Aberl, et al. v. Ashley Global Retail, LLC*, No. 37-2023-00011536 (San Diego Sup. Ct. 2023) (approving voucher settlement requiring claim submission and providing no injunctive relief); *Rivali v. Shutterfly, LLC et al.*, No. 37-2023-00019221 (San Diego Sup. Ct. 2023) (approving settlement with vouchers available only through a claims process); *In re: Fight Pass Auto-Renewal Litigation*, No. 2:23-cv-00802-CDS-EJY (D. Nev. Jan. 1, 2025) (approving settlement offering subscription credit or prorated cash payment up to $9.99). Unlike the claims-made settlements in *Aberl* and *Rivali*, the Settlement here distributes relief automatically, provides benefits comparable to *Habberfield*, and—critically—includes meaningful injunctive relief that directly addresses and halts the alleged deceptive pricing practices.

Taken together, these factors strongly support the reasonableness of the requested fee.

## VIII.  CLASS COUNSEL'S EXPENSES ARE REASONABLE

To date, Class Counsel have incurred **$24,998.22** in out-of-pocket litigation expenses in prosecuting this case. *See* Brou. Decl. ¶ 35. The Ninth Circuit permits recovery of reasonable litigation expenses in class actions, including those that would ordinarily be billed to a fee-paying client. *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). The expenses here consist of standard, case-related charges such as court filing and PACER fees, deposition and court reporter costs, service of process fees, and First Legal and delivery charges associated with filings and chambers copies. *See* Brou. Decl. ¶ 35. Each of these expenditures was reasonably and necessarily incurred in litigating this

-22-

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

matter through intensive discovery, motion practice, mediation, and settlement approval. *See* Brou. Decl. ¶ 36. Accordingly, Class Counsel respectfully request reimbursement of the full $24,998.22 to be deducted from the Settlement Costs Fund, which represents actual, documented costs essential to achieving the Settlement.

## IX.   THE REQUESTED INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES ARE FAIR AND REASONABLE

In recognition of their efforts on behalf of the Class, and subject to Court approval, Defendant has agreed to pay the two Class Representatives $5,000 each (for a total of $10,000) from the Settlement Costs Fund. Incentive awards are routinely approved to compensate class representatives for the time, effort, and risks undertaken in representing the class. *Rodriguez*, 563 F.3d at 958–59.

As detailed in the Straub Declaration, both Class Representatives made substantial contributions to this litigation. They stayed in regular contact with Class Counsel, provided detailed information during the pre-suit and early case investigation, and supplied materials relevant to Defendant's alleged deceptive strikethrough pricing. *See* Straub Decl. ¶ 12. Each Class Representative prepared for, sat for, and debriefed after depositions, requiring significant time and effort. *Id*. They also remained actively engaged throughout discovery, and participated in communications before and during mediation and the settlement negotiations, reviewing proposed terms and providing input at each stage. *Id.*

Their commitment helped secure meaningful economic and injunctive relief for the Class, and the requested $5,000 service awards appropriately reflect their efforts and are consistent with awards approved in consumer class actions.

## X.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approve the Settlement.

Case No. 2:24-cv-4425-JFW-AJR
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Dated:  November 17, 2025

CROSNER LEGAL, P.C.

By:  */s/ Brandon Brouillette*
Brandon Brouillette
Craig W. Straub
Zachary M. Crosner

Attorneys for Plaintiffs
Davida Minor and Asha Ayanna

### **L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this memorandum complies with the page limit set by Court order. *See* ECF No. 9 (Standing Order) at ¶ 5(c) (setting page limit as 25 pages for motions).

Dated:  November 17, 2025

By:  */s/ Brandon Brouillette*
Brandon Brouillette